Floyd Clayton **FORSBERG,** Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 19087.

United States Court of Appeals
Ninth Circuit.

Sept. 23, 1965.

Lyman G. Lea, San Francisco, Cal., for appellant.

Manuel L. Real, U. S. Atty., John K. Van de Kamp, Asst. U. S. Atty., Chief, Crim. Div., J. Brin Schulman, Asst. U. S. Atty., Asst. Chief, Crim. Div., Los Angeles, Cal., for appellee.

Before MERRILL and KOELSCH, Circuit Judges, and JAMESON, District Judge.

JAMESON, District Judge:

This is an appeal from a conviction of assault with a dangerous weapon, with intent to do bodily harm, in violation of 18 U.S.C. § 113(c).

On November 14, 1962, appellant was charged in a two count indictment with (1) assault with intent to commit murder in violation of 18 U.S.C. § 113(a); and (2) assault with a knife, a dangerous weapon, with intent to do bodily harm, and without just cause or excuse, in violation of section 113(c).[1] Both counts alleged that the assault was committed on October 19, 1962, at the Federal Correctional Institution at Lompoc, California, where appellant was then an inmate.

Appellant was tried before a jury, which returned a verdict of not guilty on Count One and advised the court that it was unable to reach a decision on Count Two. The court received the verdict, ordered the clerk to enter the verdict of not guilty on Count One, declared a mistrial as to Count Two, and discharged the jury. No objection was taken by counsel for either party.[2] Thereafter, appellant was retried and convicted on Count Two.

Appellant contends that the second trial on Count Two of the indictment was in violation of his constitutional right against being placed twice in jeopardy, since he had already been acquitted on Count One, which included the lesser offense set forth in Count Two.[3]

It is well settled that retrial of an accused after a mistrial because the jury is unable to agree[4] is not a denial of the constitutional right against double jeopardy. Downum v. United States, 1963, 372 U.S. 734, 735, 83 S.Ct. 1033, 10 L.Ed.2d 100, and cases there cited.[5] Appellant does not question this general

1. 18 U.S.C. § 113 reads in pertinent part:
 "Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:
 "(a) Assault with intent to commit murder or rape, by imprisonment for not more than twenty years.
 * * * * *
 "(c) Assault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse, by fine of not more than $1,000 or imprisonment for not more than five years, or both."

2. In declaring the mistrial, the court said: "You have no objection, I take it, to the declaration of a mistrial on Count Two"; to which counsel for the defendant replied, "No objection, Your Honor."

3. The Fifth Amendment to the Constitution provides in part:
 " * * * * nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb * * *."

4. Rule 29(b), Federal Rules of Criminal Procedure, provides, inter alia:
 " * * * If no verdict is returned the court may order a new trial or enter judgment of acquittal."

5. The rule was well summarized in Gilmore v. United States, 5 Cir. 1959, 264 F. 2d 44, 46, where the court said:
 "At the outset, the guaranty against double jeopardy has not yet carried this far. For over one hundred twenty-five years a retrial after mistrial from a hung jury * * * has not been considered a denial of this constitutional right. United States v. Perez, 1824, 9 Wheat. 579, 22 U.S. 579, 6 L. Ed. 165. * * * Nor does it prohibit a new trial even though the reversal of the initial conviction is for want of sufficient evidence. Bryan v. United States, 1950, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335 * * *."

rule, but contends that it is not applicable by reason of the acceptance of the verdict of acquittal on Count One. Appellant argues (1) that an acquittal or conviction of a greater offense is a bar to a subsequent trial of a lesser offense, necessarily included in, and a part of the greater, if under the indictment for the greater offense the defendant could have been convicted of the lesser offense; and (2) that the same rule applies in instances of multiple count indictments where a verdict is given upon some counts but not upon others.

Neither party has cited, nor have we found, a case precisely in point. It is necessary accordingly to examine the proceedings and the application of somewhat related cases involving claims of double jeopardy.

At the outset it should be noted that this is not a case of a multiple count indictment charging two or more offenses in which a guilty verdict might properly be returned and sentences imposed on two or more charges arising out of the same transaction.[6] Rather it is a case where the statute prescribes two distinct offenses, but one "offense requires proof of all the facts or elements necessary to establish the other, plus something more —in other words, a greater offense including a lesser". It is proper in such cases "to prosecute the accused under an indictment with separate counts charging each of these offenses". Ekberg v. United States, 1 Cir. 1948, 167 F.2d 380, 385. While two statutory offenses are charged in this case, they describe but one assault. Had appellant been found guilty on both counts, the imposition of more than one sentence would have been illegal. See Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370;[7] Smith v. United States, 9 Cir. 1961, 287 F.2d 270, 273. A conviction on either count would have been a bar to subsequent prosecution on the other count.

Viewing the instructions as a whole, it appears that these principles were recognized by the trial court in its charge to the jury. After reading the two counts of the indictment, the court instructed the jury in part as follows:

"Now to constitute the crime of assault with intent to commit murder there must exist an assault, and in the mind of the perpetrator a specific, preconceived intent to murder a human being. The circumstances must be such that if the intent had been successful the crime would have been murder.

"There are two elements to this crime. First, an assault; second, a specific intent to commit murder.

"* * *

"There are three elements to the crime charged in the second count, to-wit: Assault with a dangerous weapon. They are:

(1) an assault with a dangerous weapon;

(2) the specific intent to do bodily harm; and

(3) the absence of a just cause or excuse.

"In the crime of assault with intent to commit murder, as I have told you before, there must be, in the mind of the perpetrator the specific,

**6.** "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Blockburger v. United States, 1932, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, and cases there cited. See also United States v. Beacon Brass Co., 1952, 344 U.S. 43, 45, 73 S.Ct. 77, 97 L.Ed. 61.

**7.** In Prince v. United States, the defendant was charged under the Bank Robbery Statute, 18 U.S.C. § 2113, in two counts: (1) robbery of a federally insured bank, and (2) entering the bank with intent to commit a felony. He was convicted and sentenced under both counts. In holding that the sentence was illegal the Court said in part: "It was manifestly the purpose of Congress to establish lesser offenses. But in doing so there was no indication that Congress intended also to pyramid the penalties."

preconceived intent to kill a human being, and a person may not be convicted of such an offense if that specific intent is not established by the evidence.

"Regarding both counts of the indictment, if you should find that the defendant committed an assault with a dangerous weapon, and with the intent of committing bodily injury upon the person of Robert L. Morris, but that he did not do so with the specific, preconceived intent to kill, the defendant may be found guilty only of the lesser offense, provided, of course, the Government proves that beyond a reasonable doubt, namely: The assault with a dangerous weapon as charged in Count Two.

"If, on the other hand, you should find beyond a reasonable doubt that defendant committed an assault with the intent to kill, as I have described those terms to you, then you may find the defendant guilty as charged in Count One of the indictment."

After deliberating for three and one-half hours, the jury informed the court that it was unable to "reach an unanimous conclusion on Count Two of the Indictment * * *". In open court the jury foreman asked the court whether, if the jury were unable to agree on Count Two, the court would consider the jury's decision on Count One. The court indicated that it would not receive a report on Count One at that time and sent the jury back for further consideration of Count Two.

After further deliberation, the jury again reported that it was unable to reach a decision on Count Two. The verdict was then completed in open court,[8] with the words "not guilty" inserted with respect to Count One, and with a blank space left uncompleted with respect to Count Two. The court thereupon instructed the clerk to enter the verdict on Count One and declared a mistrial on Count Two.

It seems clear from these proceedings that the jury agreed that appellant was not guilty of assault with intent to commit murder, but could not agree on whether he was guilty of assault with intent to do bodily harm. Could he then be retried on the count involving the charge of assault with intent to do bodily harm?

■■■ Contrary to the practice in England, a retrial of a defendant under a variety of circumstances is "a well-established part of our constitutional jurisprudence". United States v. Tateo, 1964, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448.[9] The Court in Tateo also recognized that of "greater importance than the conceptual abstractions" employed to explain the principle of retrial are the "implications of that principle for the sound administration of justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial". (377 U.S. at 466, 84 S.Ct. at 1589.)

8. The foreman asked for further instructions as follows:
"THE FOREMAN: In this particular count, where it says:
'We, the jury in the above-entitled cause, find the defendant, Floyd Clayton Forsberg, ................ as charged in Count One of the indictment and .................. as charged in Count Two of the indictment.'
"May I put in our verdict on Count No. One and leave the verdict in Count No. Two blank?
"THE COURT: If that is the situation, yes, that is if that is what has been the unanimous verdict.

"THE FOREMAN: Yes, sir.
(The verdict was handed to the bailiff and to the clerk.)
"THE COURT: You have not arrived at a verdict on Count Two, is that correct?
"THE FOREMAN: Yes, sir.
"THE COURT: You are in disagreement?
"THE FOREMAN: Yes, sir."

9. The Court in Tateo cites numerous cases where a retrial was held proper after either a mistrial or reversal of a conviction for various types of error.

A leading case where a retrial was found to violate the constitutional right against double jeopardy is Green v. United States, 1957, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199. In that case the petitioner had been indicted and tried for arson and first degree murder. He was found guilty of arson and second degree murder. The conviction for second degree murder was reversed on appeal. On remand Green was again tried for first degree murder under the original indictment and this time was convicted of first degree murder. In reversing the second conviction the Court held that the jury's verdict in the first case was an implicit acquittal of murder in the first degree and that Green's jeopardy for first degree murder came to an end when the jury was discharged, so that he could not be retried for that offense.[10]

In referring to Green in the subsequent case of United States v. Tateo, supra, the Court pointed out that Green "holds only that when one is convicted of a lesser offense included in that charged in the original indictment, he can be retried only for the offense of which he was convicted rather than that with which he was originally charged". (Note 1, 377 U.S. at 465, 84 S.Ct. at 1589.)

In Edmonds v. United States, 1959, 106 U.S.App.D.C. 373, 273 F.2d 108, 113, a situation analogous to the instant case was considered by the court. There it was held the jury "by finding Edmonds guilty of only second degree murder under the first degree count, impliedly found him not guilty of murder in the first degree". His conviction for second degree murder was reversed, but the court expressly held that he could be tried

again for second degree murder under the original first degree indictment—in other words, for a lesser offense included in a single count indictment. In the instant case, appellant was retried on one count of a two count indictment. This factual difference is immaterial. As the Court said in Green, supra, where a single count was involved, "In substance the situation was the same as though Green had been charged with these different offenses in separate but alternative counts of the indictment." (355 U.S. at 184, Note 10, 78 S.Ct. at 225.)

Appellant relies strongly on Ex parte Nielsen, 1889, 131 U.S. 176, 189, 9 S.Ct. 672, 33 L.Ed. 118, where it was held that a prosecution and conviction on the charge of unlawful cohabitation was a bar to a subsequent prosecution for adultery since the adultery charged in the second indictment was an incident and part of the unlawful cohabitation for which the petitioner had been convicted. The Court recognized that "there are many cases in which a conviction or an acquittal of a greater crime is a bar to a subsequent prosecution for a lesser one", quoting from Wharton's Treatise on Criminal Law, Volume I, § 500, where it is said: "An acquittal or conviction for a greater offense is a bar to a *subsequent indictment* for a minor offense included in the former, wherever, under the indictment for the greater offense, the defendant could have been convicted of the less". Specific instances of the application of the rule were cited: "[A]n acquittal on an indictment for robbery, burglary, and larceny, may be pleaded to an indictment for larceny of the same goods, because upon the former indict-

10. In Green the Court said in part:
 "It is immaterial whether second degree murder is a lesser offense included in a charge of felony murder or not. The vital thing is that it is a distinct and different offense. If anything, the fact that it cannot be classified as 'a lesser included offense' under the charge of felony murder buttresses our conclusion that Green was unconstitutionally twice placed in jeopardy. American courts have held with uniformity

that where a defendant is charged with two offenses, neither of which is a lesser offense included within the other, and has been found guilty on one but not on the second he cannot be tried again on the second even though he secures reversal of the conviction and even though the two offenses are related offenses charged in the same indictment. See, e. g., Annotation, 114 A.L.R. 1406." (Footnote 14, 355 U.S. 194, 78 S.Ct. 227.)

ment the defendant might have been convicted of larceny." "If one be indicted for murder and acquitted, he cannot be again indicted for manslaughter". * * * (Emphasis added.)

Nielsen and the other cases we have examined refer specifically to subsequent prosecution under a new indictment for a lesser offense after prosecution and acquittal of a greater offense. We recognize that if appellant had been prosecuted only on the charge contained in Count One and acquitted, he could not then have been reindicted and prosecuted on the charge contained in Count Two. Here, however, the two counts were properly included in the original indictment. As stated, supra, it is clear that the jury agreed that the Government had failed to prove assault with intent to kill, but was unable to agree upon the second count involving the lesser degree of assault.

■ Let us assume that appellant had been found not guilty on Count One and guilty on Count Two, and that his conviction on Count Two had been reversed with a remand for a new trial. We perceive no good reason why he could not have been retried on Count Two. Nor should the fact that there was a hung jury instead of a verdict of conviction bar his retrial on Count Two. Obviously, he could not in either event be retried on the charge set forth in Count One.

■ Appellant next contends that it was error for the trial court to deny him

a transcript of the evidence at the first trial for use in the second trial. Appellant was represented by the same counsel at both trials. The court ruled that it would permit the reporter, during the second trial, to read to appellant's lawyer, out of the presence of the jury, the testimony of any witness who had testified at the first trial. The district court did not abuse its discretion in denying appellant's request for a transcript under these circumstances.[11]

■ Appellant questions the sufficiency of the evidence to sustain the charge that appellant assaulted Morris with a "knife, a dangerous weapon". In considering this point we must, of course, "view the facts in the most favorable light to sustain the judgment below". Stein v. United States, 9 Cir. 1964, 337 F.2d 14, 16, 17. We find the evidence sufficient to sustain the conviction.

■ Appellant contends further that the trial court erred in permitting testimony "concerning the rapid pulse of the appellant". On rebuttal the witness Ward testified regarding a conversation he had with appellant subsequent to the stabbing. In the course of the conversation Ward asked appellant why he had a rapid pulse. According to Ward, appellant "told me he had to run to his unit to get an apple and had returned". It is clear that the trial court permitted this evidence to be received as a part of Ward's conversation with appellant [12] and

---

11. The same question was presented in Nickens v. United States, 1963, 116 U.S. App.D.C. 338, 323 F.2d 808, 811, cert. den. 379 U.S. 905, 85 S.Ct. 198, 13 L.Ed. 2d 178, where the court said: " * * * There is no absolute right to have the transcript of a prior trial against the contingency, now urged, that some witness at the second trial may give inconsistent testimony. Any inconsistency in testimony arising at the second trial could readily be dealt with by calling the reporter of the prior trial to read the earlier testimony. Appellant had the same counsel at both trials. The District Court did not abuse its discretion in denying

appellant's bare demand for a transcript in these circumstances."

12. The transcript of the testimony reads in pertinent part:
"Q. Did you do or say anything else with him?
A. I took his pulse when I initially contacted him.
Q. Did you discuss the fact that you had taken his pulse with him?
A. He had a very rapid pulse, and I asked him why he had a very rapid pulse.
Mr. Brady: Objection; your Honor. He is not qualified to distinguish be-

not for the purpose of showing that appellant did in fact have a rapid pulse. Appellant did not request the court to include in the charge to the jury a further reference to the limited purpose for which this testimony was admitted.

Appellant next argues that it was prejudicial error for the Government counsel to comment upon the absence of one Jim Best as a witness. On cross-examination appellant testified that he had run to his quarters to speak to a friend and fellow inmate, Jim Best. The Government sought to show that this testimony was inconsistent with appellant's prior statements to other witnesses.

 Comment on the absence of a witness is permissible when the witness is peculiarly available to the opposite party. As far as disclosed by the record, the Government first became aware of the existence of this witness and his relationship to the case during the examination of appellant at the trial. Moreover, appellant did not object at the trial to counsel's comments, although he had objected to the interrogation of appellant regarding the alleged conversation with Best. "[C]ounsel for the defense cannot as a rule remain silent, interpose no objections, and after a verdict has been returned seize for the first time on the point that the comments to the jury were improper and prejudicial." United States v. Socony-Vacuum Oil Co., 1948,

310 U.S. 150, 238, 60 S.Ct. 811, 851, 84 L.Ed. 1129.

 Appellant also claims error in counsel's reference in his argument to appellant's appearance.[13] Again these remarks were made without objection by appellant. As this court said in Orebo v. United States, 9 Cir. 1961, 293 F.2d 747, 749, "This type of error would be easily correctible by the trial court upon seasonable objection."[14]

 Finally, appellant contends that the failure to exclude testimony of a special agent of the Federal Bureau of Investigation regarding conversations with appellant prior to appellant's representation by counsel violated appellant's constitutional rights under the Fifth and Sixth Amendments. The agent did not testify as a part of the Government's case in chief, but only after the appellant on direct examination had testified that he had talked with the agent three times, and that he had requested one interview in which he requested a lie detector test. The agent was called in rebuttal, and his testimony was received without objection, except that after he had testified, appellant's counsel stated, "I am going to object to this as being hearsay. You can get from him where he said he was." The testimony was admitted for the purpose of impeachment and it did not involve any confession or admission of "some knowledge of the crime" or any

tween a slow and a rapid pulse, your Honor.
The Court: I am afraid, counsel, that you haven't laid any foundation for this.
Mr. Schulman: As a matter of fact, the question was asked to the defendant, 'Why do you have a rapid pulse?' Your Honor.
The Court: Well, get to that then. Don't try to make a Doctor out of him. Get to what he said. Why belabor everything? Why not get right to the point?
By Mr. Schulman:
Q. You were asking him why he had a rapid pulse; is that correct?
A. That is correct.
Q. What did he respond?
A. He told me he had gone to his unit to get an apple and had returned.

Q. Did he tell you any other reason why he went to the unit?
A. No, sir."

13. Counsel said in argument: " * * * then you must see that man as dangerous, as bad, and as one who will not be allowed to pull wool over your eyes with his good looks, with his charming, boyish grin or his lies—if that is what you find them to be—".

14. See also White v. United States, 9 Cir. 1963, 315 F.2d 113, where the court said: "But even if there had been a taint of unfairness or prejudice (in argument), no voice was raised in protest—no objection ever raised—no chance given the trial court to cure any alleged error. This is a complete waiver."

participation therein. Escobedo v. State of Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, is not in point.

The judgment of conviction is affirmed.

The court records its appreciation of the very able, diligent, and conscientious representation of appellant by court appointed counsel, Lyman G. Lea of the San Francisco Bar.