**Jewell James WILLIAMS, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 19801.**

United States Court of Appeals
Ninth Circuit.

March 29, 1966.

---

use and necessary for the support of such person and family for six months.

"Sixth. The seat or pew occupied by the head of a family or his family in a place of public worship;

"Seventh. All property of any public or municipal corporation;

"Eighth. No article of property, or if the same has been sold or exchanged, then neither the proceeds of such sale nor the articles received in exchange therefor, shall be exempt from execution issued on a judgment recovered for its price."

Allen Williams, Pittsburg, Cal., for appellant.

Manuel L. Real, U. S. Atty., John K. Van De Kamp, Asst. U. S. Atty., Chief, Crim. Div.; J. Brin Schulman, Asst. U. S. Atty., Asst. Chief, Crim. Div., Arthur I. Berman, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before POPE, JERTBERG and DUNIWAY, Circuit Judges.

JERTBERG, Circuit Judge:

Before us is an appeal *in forma pauperis*. The appellant was indicted along with one Curtis for aiding and abetting Curtis in the robbery of the Security First National Bank, Installment Finance Department, San Diego, California, on July 26, 1963. Curtis plead guilty. Following a jury trial appellant was convicted as charged.

On March 6, 1964, appellant's motion for a new trial was granted.

On March 18, 1964, a superseding two count indictment was returned against the appellant, only. Count One charged that on or about July 26, 1963, the appellant received, possessed, concealed, bartered, sold and disposed of money

in the sum of approximately $660.00, knowing the same to have been taken with intent to steal by Fred Castoneda Curtis from the Security First National Bank, Installment Finance Department, 239 A Street, San Diego, California, a bank whose deposits were insured by the Federal Deposit Insurance Corporation, which offense was in violation of 18 U.S.C. § 2113(c).[1] Count Two is not involved herein, as it was later ordered severed and was subsequently dismissed.

Following conviction by a jury appellant was sentenced to imprisonment for a period of four years under the provisions of 18 U.S.C. § 4208(a).

We adopt the appellee's statement of the facts, believing it to be a fair statement of the case.

"At 5:00 P.M., on July 26, 1963, appellant and Curtis (the codefendant in the first case who pled guilty to the robbery) registered at a motel one and one-half blocks from the Security First National Bank located at 239 'A' Street, San Diego, California. Curtis and appellant each used an alias at the time of registration, appellant using the name of Bill Taylor. Appellant then stated that he was the owner of the 1957 Buick which they were driving. The two men were last seen at the motel at 8:00 o'clock the same evening.

"Within half an hour after they registered at the motel, Curtis, using a gun, robbed the Security First National Bank on 'A' Street of $1,320.-00. Curtis was followed out of the bank where he was observed getting into the passenger side of the 1957 Buick which immediately pulled out into traffic.

"Among the bills taken by Curtis, in addition to 'bait money', were nu-merous new one dollar bills. These bills are usually in consecutive serial numbers when given to the tellers. Prior to the robbery a bank employee had cashed a small check at the same teller's window later approached by Curtis. This employee received two new one dollar bills, the serial numbers of which were recorded by a bank official.

"At 9:30 the same evening appellant and Curtis walked into a car dealer's lot in Encinitas, California, and purchased a 1951 Ford. Each paid half the purchase price, and the purchase order was written up in the name of Bill Taylor. The salesman testified that the person using the name of Taylor was in fact appellant, that appellant had acted nervously, and that both appellant and Curtis appeared to be in a hurry.

"A few days later the 1957 Buick was found in an alley in Encinitas.

"Shortly before midnight on the same evening, following the robbery, appellant and Curtis asked Lawrence Postma, the owner of a service station near Pine Valley, California, to give them a ride to Jacomba. Instead of doing so, Postma sold the two men his 1952 Cadillac, a four-door sedan. Appellant again gave his name as William Taylor. Appellant and Curtis went briefly together behind the car, and upon their return appellant paid the purchase price. Among the bills which appellant gave to Postma were ten new one dollar bills, which Postma spent the next day in El Cajon, California. An agent of the Federal Bureau of Investigation went to two of the places where Postma had spent the money received from appellant. The agent recovered one dollar bill from one store

---

1. "§ 2113. Bank robbery and incidental crimes

" * * *

"(c) Whoever receives, possesses, conceals, stores, barters, sells, or disposes of, any property or money or other thing of value knowing the same to have been taken from a bank, or a savings and loan association, in violation of subsection (b) [defines the principal offense of Bank robbery; punishment $5000, maximum fine or imprisonment for not more than ten years or both] of this section shall be subject to the punishment provided by said subsection (b) for the taker."

and two dollar bills from the other, the serial numbers of which were close in numerical sequence to those bills the bank employee had received when he cashed his check prior to the robbery.

"Between 2:00 and 2:30 A.M., the next morning, appellant and Curtis drove the 1952 Cadillac into a motel in El Centro, California. Appellant filled out the registration card using the name Orvill Freeman and gave a San Francisco address. They left the motel about noon that day.

"Because of mechanical trouble with the Cadillac, they drove into a service station in El Centro near the motel and purchased a 1952 Ford Station Wagon with an Oldsmobile engine from Tommy Ashire. Before purchasing the car, both appellant and Curtis inquired as to whether the radio was working. Each paid one-half the purchase price, taking the money from their wallets, and the bill of sale was made out to Charles Maybery, the name used by appellant.

"Appellant and Curtis were apprehended in the station wagon by a Deputy Sheriff in Yuma, Arizona, in the early evening of July 26, 1963. At that time appellant gave his name as Charles Lee Maybery, and stated he was from Detroit. The deputy advised appellant that he was being arrested in connection with a bank robbery. Appellant had several hundred dollars in his wallet at the time of his arrest, including several new one dollar bills; the serial numbers of which were close in numerical sequence to those on the two bills which the bank employee received. In addition, appellant had $300 concealed in his shoe.

"Appellant admitted to an agent of the Federal Bureau of Investigation that, on the afternoon of the robbery, he and Curtis had driven around San Diego while Curtis looked at banks. Curtis testified that appellant was driving the get away car after the robbery."

The appellant advances the following Specification of Errors:

1. Appellant was not advised of his right to remain silent, nor of his right to have counsel at all stages of the proceedings.

2. Statements and admissions of the appellant made at the time of arrest were used against him at his trial without laying a proper foundation.

3. The trial Judge failed to give proper instructions to the jury concerning admissions and statements of the appellant which were admitted into evidence.

4. Certain phases of the pre-trial and trial procedures were conducted without the appellant present in court.

5. Appellant was not admitted to bail and indeed no bail was ever set.

6. The prosecution in its final argument to the jury misstated some of the evidence.

7. Appointed counsel, although he requested same, was not supplied with a transcript of a prior trial where no verdict was reached by the jury, but wherein most of the same witnesses testified. Said appointed counsel had not represented appellant at the aforesaid prior proceedings.

8. Appellant was apparently arrested without a warrant and without probable cause, and evidence taken from his person at this time was admitted into evidence at the trial.

We first consider errors alleged under appellant's Specifications No. 1 and 2. The appellant contends that the testimony of the witness Pearson, Special Agent for the Federal Bureau of Investigation, should have been stricken. This testimony pertained to conversation with appellant after his arrest. Appellant's claim of errors is that the record fails to show that appellant was advised of his right to remain silent and of his right to counsel prior to the time of his conversations with Agent Pearson. While appellant contends that the testimony of Agent Pearson should have been stricken from the record, the record discloses that no motion to strike was made. Further-

more, the record fails to reveal that any objections of any kind were ever posed to the testimony. During the course of cross-examination by appellant's counsel the agent was not asked if appellant had been advised of his right to remain silent and his right to counsel. It appears from the record that appellant was represented by counsel of his own choosing at the time of the conversations between Agent Pearson and the appellant. There is nothing in the record to indicate that the statements made by appellant to Agent Pearson were otherwise than voluntarily made.

We find no error. The record does not support the claims of appellant that he was in any way denied the assistance of counsel or that he was not warned of his constitutional rights. No opportunity was given to the trial court to inquire into the claims now asserted by appellant. The appellant elected not to testify in the proceedings and offered no testimony tending to show a denial of constitutional rights. The claimed errors are not properly before this Court and we find no good cause why these errors should be reviewed for the first time on appeal. See Robbins v. United States, 345 F.2d 930 (9th Cir. 1965); Dearinger v. United States, 344 F.2d 309 (9th Cir. 1965); Bouchard v. United States, 344 F.2d 872 (9th Cir. 1965); and Gilbert v. United States, 307 F.2d 322 (9th Cir. 1962), cert. den. 372 U.S. 969, 83 S.Ct. 1095, 10 L.Ed.2d 132 (1963).

■ Appellant contends that the District Court erred in failing to give proper instructions to the jury concerning admissions and statements of the appellant which were admitted into evidence. Specifically, appellant contends that the District Court should have instructed the jury of appellant's right to the assistance of counsel and his right to remain silent, and the duty on the part of the jury to reject all statements and admissions of appellant if the jury should determine that the appellant was not advised of his constitutional rights prior to the making by him of statements and admissions.

The District Court gave to the jury a lengthy and proper instruction as to the manner in which the jury should consider and treat statements and admissions of the defendant introduced in evidence as bearing upon the guilt or innocence of appellant. Among other things the District Court instructed that any admissions or statements made by him outside of court were to be subjected to careful scrutiny in order to determine whether the same were voluntarily and understandingly made, and that the jury should not consider such statements and admissions as evidence against the defendant unless the jury was satisfied beyond all reasonable doubt that such statements and admissions were, in fact, voluntarily and understandingly made. No objection was interposed by appellant to the instructions which were given, nor was any other instruction proposed by appellant.

It is also to be noted that no question was raised by appellant at the trial that he was denied the assistance of counsel, or that he was not advised of his right to remain silent. In these circumstances we find no merit in appellant's contention.

■ Appellant complains that the District Court committed reversible error in conducting certain proceedings without the presence of appellant. These occasions are three in number. It appears that on May 19, 1964, a date prior to the date on which appellant's case was set for trial, his counsel appeared in court and orally moved to dismiss the charges against the appellant in the interest of justice, and that the appellant "be returned to the jurisdiction which has a hold on him when he is ready to leave the hospital." It further appears that at the time the motion was made appellant was in the San Diego Hospital and physically unable to appear in court. The District Court denied the motion to dismiss and fixed the date of trial for June 9, 1964, later fixed for July 14, 1964.

The second occasion was on June 9, 1964. It appears that the appellant was still in the hospital and unable physically to appear. On motion of the Govern-

ment, the District Court ordered a psychiatric examination of appellant to determine whether appellant was competent to stand trial.

The third occasion was at the end of the session on the third day of trial when counsel and the District Court met to discuss instructions to be given to the jury. This meeting occurred in the absence of the jury, with the appellant being present. On that occasion counsel for appellant stated to the court that appellant had had his eyes treated that morning and was in pain, and would like to withdraw from the proceedings and return to the jail. Whereupon, the court inquired if appellant wished to waive the right to be present "during the consideration of these instructions to be given." Appellant answered in the affirmative and was permitted to return to jail. Following the conference on instructions the court adjourned for that day. No other proceedings occurred during appellant's absence. The appellant was present in court the following morning when the jury was instructed.

Rule 43 of the Federal Rules of Criminal Procedure provides, in relevant part, that:

> "The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules."

The first two occasions were on pretrial proceedings and patently do not come within the provision of Rule 43. Furthermore, counsel for appellant made no objections to the absence of the defendant on such occasions and we are unable to see any prejudice which the appellant suffered by reason of his absence on such occasions. On the third occasion which dealt only with discussion of instructions to be given, the appellant personally requested to be excused and expressly waived his right to be present. Again we are unable to discover that appellant was prejudiced in any way.

■ Appellant's contention that he was denied his right to bail and that no bail was ever set is contradicted by the record.

■ The appellant contends that the prosecution in its final argument to the jury misstated some of the evidence. No objection was interposed to any of the claimed misstatements. The initial alleged misstatement is that Curtis and the appellant each had given five new one dollar bills to Postma, being part of the purchase price for the Cadillac. The record indicates that it was appellant who gave Postma all of the bills. While the argument was somewhat varied from the evidence, we cannot see how the appellant is prejudiced if the jury believed half the bills, rather than all of them, came from the appellant.

Even if this misstatement be considered more than a trivial discrepancy, the rule laid down by this Court in Byrnes v. United States, 327 F.2d 825, 840 (9th Cir. 1964), cert. den. 377 U.S. 970, 84 S.Ct. 1652, 12 L.Ed.2d 739 (1964) is applicable here:

> "Yet we cannot hold it reversible error when a careful and minute examination *after trial* discloses some disputed and, at best, an inferred discrepancy between the purported quotation and what the witness actually said—a discrepancy apparently not sufficiently large to merit interruption and objection during argument; or any mention in the instructions to the jury."

Secondly, the appellant contends that the appellee failed to tell the jury that Postma did not know where appellant obtained the money before appellant handed it to him as appellant and Curtis were behind the car just prior to his receipt of the money. It is apparent that appellant now seeks to advance the novel proposition that the government should argue the appellant's case. Such a position is untenable.

The last alleged misstatement is that appellant and Curtis were said to have inquired whether the 1952 Cadillac had a radio in it at the time they purchased it from Postma. It is true that the record does not disclose whether they asked about a radio when they bought the Cad-

illac; nevertheless, the record indicates that they inquired about a radio when they purchased the 1952 Ford Station Wagon. This slight variance is likewise within the scope of Byrnes v. United States, supra.

Appellant contends that he was denied a fair trial because of the failure to furnish him a transcript of the testimony of witnesses who testified in the earlier trial wherein appellant was charged, along with Curtis, for aiding and abetting Curtis in the robbery of the bank, which trial resulted in the conviction of the appellant, but which conviction was set aside and a new trial granted to the appellant. Appointed counsel who represented appellant through the earlier trial was relieved of his appointment and on April 9, 1964, the court appointed counsel who thereafter represented appellant throughout the instant proceedings. On April 10, 1964, new counsel moved the District Court to require the United States Attorney to produce and permit the defendant to inspect and copy each of the following:

"1. Transcript of former trial of the defendant had in the same court on December 13–17, 1963, No. 32075;

"2. Papers and documents pertaining thereto."

The grounds in support of the motion were stated to be that:

" * * * the defendant must be allowed to review the facts and law in order to interpose a proper defense in a subsequent trial";
and

"By reason of the substitution of attorneys the defendants newly appointed attorney cannot properly prepare a defense and that the attorney for the government is in a vastly superior position to the prejudice of the defendant's constitutional rights."

On April 20, 1964, almost three months prior to the commencement of the trial in the instant case, the District Court ordered:

"[T]hat all documents now in existence will be made available to the defend-ant's counsel and the motion to portions not now transcribed is denied unless the government orders any portions hereafter transcribed."

What portions of the testimony of witnesses at the earlier trial were, or were not, then transcribed do not appear in the record before us. Apparently appellant and his counsel were satisfied with the limited order entered by the District Court since the record does not disclose any renewal of the motion or any motion for reconsideration thereof. In fact, the only other mention in the record of the Court's order was after the government had completed its case in chief and during the testimony of Curtis as a witness on behalf of the appellant, at which time it appears that a copy of the transcription of appellant's testimony at the earlier trial was furnished to appellant's counsel. We find nothing in the record tending to indicate that any inquiry was made of government counsel as to what portions of the transcript of the earlier trial was ever transcribed.

In the circumstances outlined above we are unable to say that the District Court abused its discretion in limiting the transcript of the earlier trial to be made available to the appellant. We do not believe that there is an absolute right on the part of an indigent defendant to have furnished to him the transcript of an earlier trial solely on the ground that new counsel had been appointed to represent him in the trial of a later but related case. See Nickens v. United States, 116 U.S. App.D.C. 338, 323 F.2d 808 (1963), cert. den. 379 U.S. 905, 85 S.Ct. 198, 13 L.Ed. 2d 178 (1964); Forsberg v. United States, 351 F.2d 242 (9th Cir. 1965).

We are aware of the decision of this court in Peterson v. United States, 351 F.2d 606 (9th Cir. 1965) wherein we reversed a conviction where an indigent defendant had not been provided a transcript of the testimony of the government's chief witness, given at an earlier trial. In that case, appellant and his co-defendant were charged with conspiring to steal an aircraft battery from Nellis Air Force Base located near Las Vegas,

Nevada. The defendants were civilians who had no access to the Base. The government's case was founded on the testimony of one Hamilton, a member of the Air Force personnel stationed at the Base. He testified that he had been approached by the defendants, had thereupon reported the incident to government authorities and had been encouraged by them to join in the conspiracy, and had done so. After the conclusion of the first trial new counsel was substituted, who promptly moved the court for an order directing the United States to furnish the defendant with a transcript of the first trial at government expense. The government resisted the motion and it was denied. When the case was called for trial defense counsel renewed his motion and again it was denied. In the course of that opinion it is stated, at page 608:

"The question is whether denial of access to this material in the circumstances of this case amounted, on the one hand, to a loss of mere advantage, or, on the other hand, to the deprivation of a basic essential of defense.

"In our judgment, under any reasonable standard, earlier statements respecting the facts at issue made under oath by the Government's chief witness (upon whose testimony the Government case must stand or fall) must, when such statements are available, be regarded as essential tools of the defense. The importance of such material for purposes of impeachment was clearly spelled out in Jencks v. United States, 353 U.S. 657, 667, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1956). The importance of impeachment in this case is emphasized by the fact that the defense of appellant was actually a defense against the testimony of Hamilton. We conclude that to deprive a defendant of such vital and available defense material is to force him to combat insufficiently armed and thus to deprive him of fair trial.

"In our judgment, where new counsel is involved and the testimony subject to impeachment is crucial to the Government's case, a transcript of the earlier testimony is the only adequate means for providing this material. The holding of this court in Forsberg v. United States, 351 F.2d 242 (9th Cir. 1965) is thus distinguishable.

"Where access to such essential material can be had for a fee, this 'money hurdle' must, under Griffin, be met for the indigent at Government expense. In this case means for meeting it is provided by Title 28, § 753(f), U.S.C.

"We conclude that it was error not to provide appellant at Government expense with a transcript of the testimony given by Hamilton at the first trial." (Footnotes omitted).

In appellant's brief it is asserted for the first time that the primary use of a transcript of the testimony given at the earlier trial would have been impeachment of the several witnesses offered in the instant trial. The assertion now made by appellant is much too conjectural and speculative in the circumstances of this case upon which to base a holding that the District Court abused its discretion in the making of the order under review.

Unlike the facts in *Peterson*, supra, the government's case did not depend upon testimony of the character appearing in that case. The government's case was based upon a series of circumstances and the testimony of many witnesses, each testifying to the various details involved, and many documentary exhibits, from all of which diversified material the jury could properly find the appellant guilty. In this case there was no single witness, the impeachment of whose testimony could be relied upon by the appellant for his defense to the charges.

Appellant's final contention is that his arrest was without a warrant, without probable cause, and that the evidence obtained from him at the time of his arrest was illegally taken and should not have been received in evidence. The appellant addressed no motion to the District Court to suppress the evidence received prior to, or at any time during, the

trial. No objections were made to the admissibility of such evidence.

In Bouchard v. United States, supra, we stated 344 F.2d at page 875:

"Appellant next argues that no probable cause existed for appellant's arrest; that the arrest was therefore illegal; and that the admission at the trial of certain evidence obtained pursuant to the arrest was violative of the Fourth Amendment to the United States Constitution. * * *.

"No objection was made at the trial to the officer's testimony in this regard or was a motion to suppress the allegedly illegally seized evidence at any time made as required by Rule 41(e), Federal Rules Crim. Proc., 18 U.S.C.A. Failure to make objection to evidence either before or at trial precludes consideration of objections thereto on appeal unless good cause for such failure is shown. Gilbert v. United States, 307 F.2d 322 (9th Cir. 1962). No 'good cause' is shown here."

The judgment of conviction is affirmed.