**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Jose A. GUILBERT,
Defendant-Appellant.**

**No. 81–5652.**

United States Court of Appeals,
Eleventh Circuit.

Dec. 6, 1982.

Certiorari Denied Feb. 28, 1983.
See 103 S.Ct. 1260.

H. Jay Stevens, Asst. Federal Public Defender, Orlando, Fla., for defendant-appellant.

Stephen D. Milbrath, Asst. U.S. Atty., Orlando, Fla., for plaintiff-appellee.

Appeal from the United States District Court for the Middle District of Florida.

Before RONEY, TJOFLAT and FAY, Circuit Judges.

PER CURIAM:

Jose Guilbert was charged in a two-count indictment with (1) assault with a dangerous weapon in violation of 18 U.S.C. § 113(c), and (2) assault by striking, beating, or wounding in violation of 18 U.S.C. § 113(d). Guilbert entered pleas of not guilty on both counts and asserted the defense of insanity. Following a jury trial, Guilbert was convicted on both counts. Guilbert thereafter brought this appeal claiming that the evidence was insufficient to support his convictions and that the district court erred by imposing a consecutive sentence for Count II. We affirm.

When assessing the sufficiency of the evidence supporting a criminal conviction, we must view the facts and all reasonable inferences derived therefrom in the light

most favorable to the government. *United States v. Spradlen,* 662 F.2d 724, 727 (11th Cir.1981). So viewed, the facts are as follows. Early on the evening of October 28, 1980, Guilbert entered the Comet Club, a recreational center located on the premises of Patrick Air Force Base. Although a civilian, Guilbert was permitted in the Comet Club because his wife was an employee of the government. Guilbert went to the recreational area on the first floor and engaged in playing pool and pinball machines.

Guilbert encountered an acquaintance and began bragging that he could "beat" a certain pinball machine. He then picked up the machine, placed its front legs on top of his shoes, and began operating it in this position. Shortly thereafter, Staff Sergeant Gene William Poulin, night manager of the Comet Club, entered the first-floor recreational area wearing civilian clothes and a shirt bearing the words "Comet Recreation Center." Poulin observed Guilbert operating the pinball machine improperly, so he walked up to Guilbert and told him to put the legs of the machine back on the floor. Guilbert replied that he would play the machine any way he wished because it was his quarter. Poulin then told Guilbert that if he refused to play the machine in the correct manner, he would have to leave the Comet Club or else Poulin would call the Security Police.

Guilbert continued to object to Poulin's request, but Poulin insisted that Guilbert must either play the machine properly or leave the club. Finally, Guilbert slammed the pinball machine to the floor and told Poulin that he had had enough and that he was going to kill Poulin. Guilbert then struck Poulin in the face. A scuffle ensued, and the two men fell to the floor. Poulin pinned Guilbert to the floor, punching him one time in the face. Guilbert struggled unsuccessfully to get up and told Poulin that when he did get up he was going to kill Poulin. Poulin told Guilbert to "cool off" and leave the club or else Poulin would call the police.

Poulin finally released Guilbert, stood up, and then turned and began walking toward a telephone at the other end of the building to call the Security Police. As Poulin was walking toward the telephone, Guilbert grabbed a beer bottle from a nearby table and broke it by slamming it against a beam. When Poulin heard the sound of breaking glass, he wheeled around and saw Guilbert rushing toward him swinging the broken beer bottle in a threatening manner. Poulin retreated toward the rear of the building with Guilbert in full chase. Guilbert got close enough to Poulin at times to graze Poulin's shirt with the broken bottle, inflicting superficial wounds on Poulin's body.

As Guilbert continued to pursue Poulin, he grabbed a pool stick and struck Poulin's shoulder with the stick. Poulin then grabbed a pool stick and positioned it horizontally in an effort to protect himself from Guilbert's blows with the pool stick and the beer bottle. Guilbert managed to strike Poulin across the back with the pool stick, however, breaking the stick in the process. Guilbert continued to stalk Poulin, and when the two men neared the stairway to the second floor, Guilbert stabbed Poulin with the broken beer bottle. Guilbert then struck Poulin with the broken pool stick.

Poulin then managed to escape up the stairs to the second floor. When Poulin got upstairs, he was immediately attended to by several Comet Club employees. Poulin was heavily bruised, had blood on his hands and his shirt, and had numerous lacerations. He was then rushed to a hospital for treatment.

When police officers arrived at the Comet Club to investigate the incident, they found Guilbert standing near the pool tables with a broken beer bottle at his feet. Guilbert told at least two of the police officers that he was going to go upstairs and kill Poulin. Guilbert also told the officers that he was an epileptic and thus not responsible for his actions.

■ At trial, Guilbert defended on the ground that he was insane at the time of the alleged assault as a result of a mental defect known as episodic discontrol syndrome. Both the prosecution and the defense presented expert testimony concerning Guilbert's mental condition. Not surprisingly, this expert testimony was con-

flicting. Viewed in the light most favorable to the government, however, the expert testimony failed to establish that Guilbert was suffering from a mental defect at the time of the assault.

Guilbert raises two issues on this appeal. First, he contends that the evidence was insufficient to support his conviction on either count. When assessing the sufficiency of the evidence supporting a criminal conviction, the standard of review is whether, viewing the evidence and all reasonable inferences derived therefrom in the light most favorable to the government, a reasonable jury could conclude that the evidence establishes guilt beyond a reasonable doubt. *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) *(En Banc).*

Count I of the indictment charged Guilbert with a violation of 18 U.S.C. § 113(c), which proscribes "[a]ssault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse...." Conviction under § 113(c) requires proof of (1) an assault committed, (2) with a dangerous weapon and (3) with intent to do bodily harm. The existence of "just cause or excuse" for the assault is an affirmative defense, and the government does not have the burden of pleading or proving its absence. *United States v. Phillippi,* 655 F.2d 792, 793 (7th Cir.), *cert. denied,* 454 U.S. 974, 102 S.Ct. 526, 70 L.Ed.2d 394 (1981); *Hockenberry v. United States,* 422 F.2d 171, 173 (9th Cir.1970); *United States v. Peters,* 476 F.Supp. 259, 262 (E.D. Wis.1979).

The term "assault" is not defined by the statute, but where "a federal criminal statute uses a common law term without defining it, the term is given its common law meaning." *United States v. Bell,* 505 F.2d 539, 540 (7th Cir.1974), *cert. denied,* 420 U.S. 964, 95 S.Ct. 1357, 43 L.Ed.2d 442 (1975). *See Brundage v. United States,* 365 F.2d 616, 619 (10th Cir.1966). At common law, "assault" had two meanings, one being criminal assault, which is an attempt to commit a battery, and the other being tortious assault, which is an act that puts another in reasonable apprehension of immediate bodily harm. *United States v. Du-*

*pree,* 544 F.2d 1050, 1051 (9th Cir.1976). Both meanings are embraced within the term "assault" as used in 18 U.S.C. § 113. *Id.; United States v. Bell,* 505 F.2d at 540–41. Furthermore, where the assault is of the first type, *i.e.,* an attempted battery, the victim need not have experienced reasonable apprehension of immediate bodily harm, and the fact that the battery is actually committed does not result in a merger therein of the assault; proof of a battery supports a conviction for assault. *United States v. Dupree,* 544 F.2d at 1052. In this case, the evidence beyond a reasonable doubt supports each of the three following conclusions: (1) that Guilbert attempted to commit a battery upon Poulin; (2) that Guilbert in fact committed a battery upon Poulin; and (3) that Guilbert committed acts that placed Poulin in reasonable apprehension of immediate bodily harm. Therefore, beyond question the government met its burden of proof on the first element of the offense charged.

The second element of proof required is that the assault be committed with a dangerous weapon. The determination whether an object constitutes a "dangerous weapon" turns not on the object's latent capability alone, but also on the manner in which the object was used. Objects that are not dangerous weapons *per se* are deemed to be "dangerous weapons" within the meaning of 18 U.S.C. § 113(c) when used in a manner likely to endanger life or inflict great bodily harm. *United States v. Johnson,* 324 F.2d 264, 266 (4th Cir.1963). Thus, the term "dangerous weapon" is not restricted to such obviously dangerous weapons as guns, knives, and the like, but can include virtually any object given appropriate circumstances.

In this case, the evidence shows beyond a reasonable doubt that Guilbert employed two objects in his assault upon Poulin: a broken beer bottle and a pool stick. The evidence further shows beyond a reasonable doubt that Guilbert used each of these two objects in a manner likely to endanger life or inflict serious bodily harm upon Poulin. Therefore, both the broken beer bottle and the pool stick constituted "dangerous weapons" under the facts of this case. *Cf.*

*Thornton v. United States,* 268 F.2d 583 (D.C.Cir.1959) (wine bottle, where used to beat victim, is dangerous weapon); *United States v. Johnson, supra* (chair, where used to strike victim, is dangerous weapon).

■■■■ The final element of proof required for conviction under § 113(c) is that the assault be committed with intent to do bodily harm. The intent of the defendant "is not to be measured by the secret motive of the actor, or some undisclosed purpose merely to frighten, not to hurt," but rather "is to be judged objectively from the visible conduct of the actor and what one in the position of the victim might reasonably conclude." *Shaffer v. United States,* 308 F.2d 654, 655 (5th Cir.1962) (per curiam), *cert. denied,* 373 U.S. 939, 83 S.Ct. 1544, 10 L.Ed.2d 694 (1963). The evidence in this case shows that Guilbert made repeated threats throughout the altercation that he was going to kill Poulin; that when Poulin retreated Guilbert gave chase, all the while attempting to strike or stab Poulin with dangerous weapons; that, even after Poulin in fact had suffered bodily injury from these weapons, Guilbert relentlessly continued his attack; and that, once Poulin managed to escape up the stairs and obtain treatment from fellow employees, Guilbert threatened to go upstairs, find Poulin, and kill him. This evidence is more than sufficient to support the jury's conclusion that Guilbert possessed the requisite intent to inflict bodily harm upon Poulin. Therefore, because all three elements of the charged offense were proved beyond a reasonable doubt, and because Guilbert failed to establish that he acted with just cause or excuse, we hold that the evidence was sufficient to support Guilbert's conviction under § 113(c).

■■■■ Count II of the indictment charged Guilbert with violation of 18 U.S.C. § 113(d), which proscribes "[a]ssault by striking, beating, or wounding. . . ." This offense is the equivalent of simple battery, and subsection (d) "requires neither a particular degree of severity in the injury nor that type of specific intent which characterizes the more serious offenses under Section 113." *United States v. Stewart,* 568 F.2d 501, 505 (6th Cir.1978). *Accord, United States v. Knife,* 592 F.2d 472, 482 (8th Cir. 1979); *United States v. Martin,* 536 F.2d 535 (2d Cir.), *cert. denied,* 429 U.S. 862, 97 S.Ct. 167, 50 L.Ed.2d 141 (1976). The facts of this case clearly support the conclusion that Guilbert was guilty of committing an assault upon Poulin by striking, beating, or wounding, and this is all that the statute requires for conviction. Thus, we hold that the evidence was sufficient to support Guilbert's conviction on Count II.

■■■ Guilbert's final contention is that the district court erred by imposing a consecutive sentence on Count II. Guilbert asserts that the offenses charged under Counts I and II are the "same offense" for double jeopardy purposes because they arose from a single transaction and thus can constitute only one "assault."[1] "The

---

1. Guilbert relies upon *Forsberg v. United States,* 351 F.2d 242 (9th Cir.1965), *cert. denied,* 383 U.S. 950, 86 S.Ct. 1209, 16 L.Ed.2d 212 (1966). We find *Forsberg* unpersuasive for several reasons. *Forsberg* dealt with 18 U.S.C. §§ 113(a) and 113(c), rather than §§ 113(c) and 113(d), which are the only two sections involved in the present case. Although *Forsberg* held that § 113(c) is a lesser included offense of § 113(a); it did not address the relationship between § 113(c) and § 113(d). Guilbert relies upon certain language from *Forsberg* where that court, referring to §§ 113(a) and (c), stated: "While two statutory offenses are charged in this case, they describe but one assault. Had appellant been found guilty on both counts, the imposition of more than one sentence would have been illegal." 351 F.2d at 245. We are unpersuaded by this language not only because it addressed a different statutory

relationship than that involved in the present case, but also because it is clearly dicta: the defendant in *Forsberg* was not found guilty on both counts, and thus obviously did not receive more than one sentence. We believe that the inapplicability of *Forsberg* to the case at hand is most clearly illustrated, however, by the following statement in the *Forsberg* opinion itself:

At the outset it should be noted that this is not a case of a multiple count indictment charging two or more offenses in which a guilty verdict might properly be returned and sentences imposed on two or more charges arising out of the same transaction.

351 F.2d at 245. The *Forsberg* court then quotes language from *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), as the applicable test for determining whether two distinct statutory

established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932):

> " 'The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.... ' "

*Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). Applying the *Blockburger* test, we find that § 113(c) requires proof of intent to do bodily harm, whereas § 113(d) requires no specific intent of any kind. Moreover, because § 113(d) requires proof of "striking, beating, or wounding," this subsection requires some kind of actual physical contact with the victim; conviction under subsection (c) can be based upon an act that merely places the victim in reasonable apprehension of imminent bodily harm. Thus, each subsection requires proof of at least one fact not required by the other, and the two offenses are therefore not the "same offense" as contended by Guilbert. Accordingly, we hold that the district court did not err by imposing consecutive sentences for Counts I and II.

For the reasons expressed in this opinion, Guilbert's convictions and sentences on both counts are affirmed.

AFFIRMED.

provisions constitute the same offense. 351 F.2d at 245 n. 6. We set forth and apply the

*Blockburger* test immediately *infra.*