**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jack A. GIBSON, Defendant–Appellant.**

No. 89–5545.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 18, 1990.

Decided Feb. 23, 1990.

John W. Gill, Jr., U.S. Atty., David Dake, Asst. U.S. Atty., argued, Janice Kell, Asst. U.S. Atty., Knoxville, Tenn., for plaintiff-appellee.

James W. Greenlee, argued, Sevierville, Tenn., for defendant-appellant.

Before MARTIN and WELLFORD, Circuit Judges, and LIVELY, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Jack A. Gibson appeals his conviction on each of five counts of an indictment arising out of his drunken driving spree in the Great Smoky Mountains National Park. Gibson argues that the district court erred in denying his motion for a judgment of acquittal on one of the counts and that the district court abused its discretion in imposing consecutive sentences. For the reasons stated below, we affirm the district court.

At approximately 11:00 p.m. on June 15, 1988, United States Park Ranger Kirk Tranchita was conducting a routine patrol on the main road through the Great Smoky Mountains National Park when he became involved in the pursuit of a car driven by Gibson. Ranger Tranchita paced Gibson's speed at 50 miles per hour in a 35 miles per hour speed zone and saw Gibson's car weaving across the road. Realizing that Gibson was possibly intoxicated, Ranger Tranchita turned on his blue lights and siren. Gibson did not stop or respond in any manner. Ranger Tranchita continued chasing Gibson through 14 miles of winding national park road with Gibson's speed varying between 30 and 55 miles per hour. Despite the turn-offs along the way, Gibson never stopped, ignoring Ranger Tranchita's flashing lights and siren.

When Ranger Tranchita realized that Gibson was heading for the "Y," a fork in the road about one mile inside the park, he called the park ranger dispatcher and asked for help. Because no other rangers were available, the dispatcher requested outside police assistance. Chief Fred Ledbetter and Officer Ron Suttles of the Townsend, Tennessee Police Department were about five miles away from the "Y," when they received the request for help. They rushed to the "Y" to intercept Gibson. When Chief Ledbetter and Officer Suttles arrived at the "Y," Officer Suttles parked their police car at the base of a triangular grass median in the middle of the "Y," facing toward Gatlinburg, Tennessee. Because they did not have direct radio contact with Ranger Tranchita and did not know Gibson's location, they turned off the lights on the police car and waited.

When Officer Suttles and Chief Ledbetter saw the headlights and the blue lights of Ranger Tranchita's pursuing car against the backdrop of the mountains, Officer Suttles turned on his lights, and he and Chief Ledbetter stepped out of the car. As Gibson approached the "Y," he slowed, and Officer Suttles thought he was going to stop. Officer Suttles, carrying his flashlight, stood near the center of the roadway, but in the lane for traffic approaching Gibson instead of Gibson's lane.

Instead of stopping, Gibson suddenly accelerated, drove straight at Officer Suttles, crossed the center line, and hit him. The left front bumper of the car struck Officer Suttles just below the left knee. The impact threw Officer Suttles onto the hood of the car where he rolled against the windshield, bounced over the top of the car, and landed in the road.

When Officer Suttles landed, he stood and fired one shot at Gibson's fleeing car. Although the bullet pierced the rear window, no one was hit. Gibson did slow down. Ranger Tranchita continued the chase, and Officer Suttles and Chief Ledbetter jumped into their car to join the pursuit.

Just outside the park, Officer Suttles and Chief Ledbetter overtook both the ranger and Gibson. They pulled in front of Gibson and forced him to stop. After Gibson was stopped, Ranger Tranchita noted that Gibson smelled strongly of alcohol. Gibson had a hard time standing up, but still managed to be belligerent. Gibson told the officers that if he had the chance, he would repeat his actions, and that Officer Suttles deserved to get hit for standing in the road.

At the start of his trial in district court, Gibson pled guilty to four offenses: (1) driving under the influence of an intoxicant, 16 U.S.C. § 3; 36 C.F.R. § 4.23(a); (2) driving on a revoked license, 16 U.S.C. § 3; 36 C.F.R. § 4.2; Tenn.Code Ann. § 55–10–616; (3) refusal to submit to a blood alcohol test, 16 U.S.C. § 3; 36 C.F.R. § 4.23(c)(2); and (4) refusal to yield to an emergency vehicle, 16 U.S.C. § 3; 36 C.F.R. § 4.2; Tenn.Code Ann. §§ 55–8–132, 55–8–102.

Gibson proceeded to trial on the remaining count of assault with a dangerous weapon with intent to cause bodily injury without just cause or excuse under 18 U.S.C. § 113(c). At the close of the government's case, Gibson moved for acquittal on the basis that the government had introduced no evidence that Gibson had specific intent to cause bodily injury to Officer Suttles. The district court denied this motion, and the jury convicted Gibson.

In preparation for sentencing after the conviction, the United States probation officer calculated that the range under the United States Sentencing Guidelines was 77 to 96 months for the assault conviction, although the *statutory* maximum for assault was 60 months. Gibson had eight prior convictions for driving while intoxicated. Indeed, Gibson was on probation for one of these convictions at the time of his rampage through the Great Smoky Mountains National Park. In one of these previous offenses, Gibson also fled from the officers. On that occasion, Gibson wrecked his car and assaulted the officer who apprehended him.

The district court departed downward from the guideline range for the assault conviction and sentenced Gibson to 48 months in prison, from which the United States did not appeal. The district court also imposed consecutive sentences of six months for each of the other four guilty plea offenses, resulting in a final sentence of 72 months.

■ On appeal, Gibson argues that the district court abused its discretion both in refusing to grant its motion for acquittal at the close of the government's case and in sentencing him consecutively instead of concurrently. Addressing the motion for acquittal, Gibson contends that the government introduced no evidence from which the jury could infer that Gibson acted with specific intent. Under federal law, specific intent is an element of the offense of assault with intent to commit bodily harm. 18 U.S.C. § 113(c); *United States v. Guilbert*, 692 F.2d 1340, 1344 (11th Cir.1982), *cert. denied*, 460 U.S. 1016, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983).

■ Federal law governs this case of drunk driving and assault with intent to commit bodily harm because the incident took place in a United States Park. As a United States Park Ranger, the arresting officer, Ranger Tranchita, had substantially the same powers and duties as other federal law enforcement officers. 16 U.S.C. § 1a–6(b). Park rangers may carry firearms, execute warrants, make arrests with warrants or on probable cause, and conduct investigations of offenses against the United States. *Id.* Congress passed section 1a–6(b) to clarify any uncertainty as to the authority of park officers. H. Rep. No. 94–1569, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Admin. News 4290, 4291. In its report, the House Committee on Interior and Insular Affairs stated, "Law enforcement duties should be a function of the National Park ranger, along with a diversity of other protection concerns." *Id.* at 9, *reprinted in* 1976 U.S.Code Cong. & Admin.News 4290, 4295. Thus, park rangers have full authority to enforce federal law in the United States parks.

■ In this case, the district court's refusal to grant a motion to acquit is a *de novo* legal question on review. The standard is whether the government had introduced evidence sufficient for any rational trier of fact to convict, viewing the evidence and all reasonable inferences in the light most favorable to the government. *United States v. Gibson*, 675 F.2d 825, 829 (6th Cir.), *cert. denied*, 459 U.S. 972, 103 S.Ct. 305, 74 L.Ed.2d 285 (1982). The district court did not err in finding that the government met this standard.

■ A defendant's state of mind is a question of fact, often determined by objective evaluation of all the surrounding facts and circumstances. *Guilbert*, 692 F.2d at 1344. Here, the government introduced evidence that showed that Gibson negotiated 14 miles of winding, mountainous roads while being chased by a United States Park Ranger. From this evidence, the jury could find that Gibson, although intoxicated, could maneuver his car.

Ranger Tranchita testified that while he was chasing Gibson toward the "Y," he saw the police car blocking one of the forks. Officer Tranchita saw Officer Suttles walk into the roadway, waving his arms and flashlight. From this evidence, the jury could infer that Gibson also could see Officer Suttles.

■ The government also introduced uncontroverted evidence that Gibson, after initially slowing down, accelerated his ve-

hicle and aimed it at Officer Suttles. After Gibson finally was forced to pull over, he remarked to the officers that he would do it again and that Officer Suttles deserved to get hit for standing in the road. From this evidence, the jury could infer not only that Gibson had control of his car and accelerated it toward Officer Suttles, but that he had specific intent to strike Officer Suttles with his car with intent to do bodily harm.[1] The district court did not err in denying Gibson's motion for judgment of acquittal.

■ Turning to the district court's decision to impose the sentences consecutively, Gibson argues that this decision violated section 3D1 of the United States Sentencing Guidelines. However, section 3D1 does not apply to Gibson's sentence because the offenses to which he pled guilty were all Class B misdemeanors. A Class B misdemeanor is an offense for which the maximum sentence is not greater than six months. *United States Sentencing Commission Guidelines Manual*, § 1B1.9 application note 1, (rev.ed. 1989). Under section 1B1.9, the sentencing guidelines do not apply to Class B and C misdemeanors. Application Note 2 states explicitly that sentences for Class B and C misdemeanors may be imposed either consecutively or concurrently with sentences for other counts. *Id.*

■ The district court gave explicit reasons in the record for the sentence and did not abuse its discretion in choosing to impose these sentences consecutively, although all of the counts in the indictment arose out of a single series of actions by Gibson. Application Note 2 to section 1B1.9 of the sentencing guidelines states that in determining whether to impose sentences consecutively, a court should consider the relationship between a Class B misdemeanor and any other offenses for which the defendant is being sentenced. *Id.* Against this consideration, the district court could weigh the seriousness of Gibson's conduct in the Great Smoky Moun-

tains National Park, his penchant for acting similarly in the past, and the fact that the statute's maximum sentence pulled Gibson well below his sentencing range under the guidelines. In light of these factors, the decision to impose consecutive sentences was not an abuse of discretion. Indeed, with nine convictions for driving under the influence of alcohol in eight years, Gibson is fortunate that he has not ended one of his intoxicated escapades facing a sentence for manslaughter or second degree murder.

The judgment of the district court is affirmed.

---

1. There can be little doubt that a speeding car could be a dangerous weapon under the statute. To be dangerous, a weapon need not be a gun or a knife; an object is a dangerous weapon if it is used in a manner likely to cause bodily harm. *Guilbert,* 692 F.2d at 1343.