**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Thomas A. LARKIN,**
**Defendant-Appellant.**

No. 78–2124.

United States Court of Appeals,
Fifth Circuit.

Nov. 5, 1979.

James M. Russ, I. Paul Mandelkern, Orlando, Fla., for defendant-appellant.

David B. Smith, App. Sec., Crim. Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before THORNBERRY, GOLDBERG and GEE, Circuit Judges.

GOLDBERG, Circuit Judge:

This case involving the arcane principles of double jeopardy and collateral estoppel is not susceptible of bright-letter law or black-letter law; the areas are most often gray, and dimly to be seen. Needless to say, one entering this field must do so with trepidation.

As a result, the battles in these areas are pockmarked by assaults, retreats, and advances. In both fields we look for terrain that has been fought over, and cast our eyes about for tactical maneuvers in order to discover some grand design which really

and in fact can fit the particular case before us for judgment and disposition. But we find no classic to compare to the Clausewitz of military fame. We too are thus hesitant to enter the field, but we shall do so bravely. And, at analysis' end, we are confident that contemporary jurisprudence justifies our conclusion.

This action arose out of the bombing of a trucking firm by members of a teamsters' local which was engaged in a labor dispute with the company. Appellant Larkin was tried under an indictment which charged, in essence, that Larkin and his co-conspirator, Parker, who was president of the local, conspired to cover up Parker's involvement in the bombing.

The indictment consisted of thirteen counts, seven of which are relevant to this appeal. Count one alleged that Larkin and Parker violated 18 U.S.C.A. § 371[1] by conspiring to commit five illegal acts.[2] It charged that the co-conspirators agreed to obstruct a criminal investigation in violation of 18 U.S.C.A. § 1510,[3] to obstruct the due administration of justice in violation of 18 U.S.C.A. § 1503,[4] to suborn perjury in violation of 18 U.S.C.A. § 1622,[5] to embezzle funds of a labor organization in violation of

1. 18 U.S.C.A. § 371 (West 1966), in pertinent part, provides the following:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

2. Count one of the indictment is less than artfully drawn. It seems to charge the formation of a conspiracy with three objects and allege the commission of two crimes by the members of that conspiracy. However, the parties have consistently treated the indictment as one alleging a conspiracy with five objects. Moreover, our examination of the record indicates that the trial court concurred in this interpretation. In light of this conduct by the court and the parties, and in the absence of any claim by the defendant of prejudice created by the ambiguity, we treat the indictment as alleging a conspiracy with five objects.

3. 18 U.S.C.A. § 1510 (West Supp.1979) provides the following:

(a) Whoever willfully endeavors by means of bribery, misrepresentation, intimidation, or force or threats thereof to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute of the United States by any person to a criminal investigator; or

Whoever injures any person in his person or property on account of the giving by such person or by any other person of any such information to any criminal investigator—

Shall be fined not more than $5,000, or imprisoned not more than fives years, or both.

(b) As used in this section, the term "criminal investigator" means any individual duly authorized by a department, agency, or armed force of the United States to conduct or engage in investigations of or prosecutions for violations of the criminal laws of the United States.

4. 18 U.S.C.A. § 1503 (West 1966) provides the following:

Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States commissioner or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer, commissioner, or other committing magistrate, or on account of his testifying or having testified to any matter pending therein, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

5. 18 U.S.C.A. § 1622 (West 1966) provides that "[w]hoever procures another to commit any perjury is guilty of subornation of perjury, and shall be fined no more than $2,000 or imprisoned not more than five years, or both."

29 U.S.C.A. § 501(c),[6] and to falsify the records of a labor organization in violation of 29 U.S.C.A. § 439(c).[7] Counts two through seven alleged that Larkin and Parker committed the substantive crimes of embezzling union funds and falsifying union records. Larkin's criminal responsibility under these counts, however, was not based upon any actual participation in the commission of the crimes, but was instead premised upon the vicarious liability theory of *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).[8]

From the Government's standpoint, the trial was less than successful. Larkin was acquitted by the jury on counts two through seven. As to Larkin's culpability under count one, the jury was "hopelessly deadlocked" and, as a result, the trial court *sua sponte* declared a mistrial as to this count without objection by either party.

■ Subsequently, the Government notified the court and Larkin that it intended to retry the defendant under count one.[9] In response to this notice, Larkin filed a motion to dismiss, claiming that a retrial on the conspiracy charge would constitute double jeopardy in light of his acquittal on counts two through seven, the *Pinkerton* vicarious liability counts. From the trial

court's denial of this motion, Larkin appeals.[10]

In support of his double jeopardy claim, the appellant presses two contentions. First, he contends that the conspiracy charged in count one is a lesser included offense of counts two through seven, the counts predicated upon vicarious liability. Accordingly, he argues, his acquittal on the greater charges precludes his retrial on the lesser charge. Second, Larkin argues that the collateral estoppel principles engrafted upon the double jeopardy clause by *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), prevent the retrial of the conspiracy count because, in acquitting him of the *Pinkerton* vicarious liability charges, the jury must have found that the defendant was not a member of a conspiracy with Parker. We address each contention in turn.

I

Larkin argues that the conspiracy charged in count one of the indictment is a lesser included offense of the offenses charged in counts two through seven, the *Pinkerton* vicarious liability counts. As a result of his acquittal on the greater charges, the *Pinkerton* counts, Larkin con-

6. 29 U.S.C.A. § 501(c) (West 1975) provides the following:
    (c) Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

7. 29 U.S.C.A. § 439(c) (West 1975) provides that "[a]ny person who willfully makes a false entry in or willfully conceals, withholds, or destroys any books, records, reports, or statements required to be kept by any provision of this subchapter shall be fined not more than $10,000 or imprisoned for not more than on year, or both."

8. The indictment on its face does not indicate that Larkin's liability under counts two through seven is vicarious. However, the Government concedes that these charges are based on *Pinkerton v. United States, supra,* which held that a conspirator is liable for the criminal acts of his

co-conspirator if those acts are committed during the course of, and in furtherance of the conspiracy, and are reasonably foreseeable as a necessary or natural consequence of the conspiracy. Moreover, it is evident from the record that the district court tried these counts under this theory. Accordingly, we treat them as *Pinkerton* vicarious liability charges.

9. Three other counts of the indictment charged Larkin with liability as a principal under 18 U.S.C.A. § 2 for the crimes of embezzlement of union funds and falsification of union records. The jury was also deadlocked as to these counts. Although the Government intends to retry Larkin under these charges also, they are not pertinent to this appeal, for Larkin does not raise any double jeopardy claim with respect to them.

10. We have jurisdiction under *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), which allows an interlocutory appeal from a trial court order denying a defendant's double jeopardy claim.

tends that he may not be retried on the conspiracy count, the lesser included offense. To establish the validity of this argument, Larkin asks us to compare a trio of recent Supreme Court double jeopardy cases—*Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977); and *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977)—with *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), the case which established the purported relationship between the conspiracy and vicarious liability counts. Accordingly, we now turn to an examination of this precedent.

In *Brown, supra*, the defendant's double jeopardy claim derived from the fact that he was twice prosecuted for stealing a car from a parking lot in East Cleveland, Ohio. In the first prosecution, the defendant pleaded guilty to the crime of joyriding,[11] and was sentenced to thirty days in jail and fined one hundred dollars. Subsequently, the defendant was prosecuted and convicted of auto theft.[12] The Supreme Court was confronted with the defendant's claim that this second prosecution violated the fifth amendment prohibition against double jeopardy.

The Court's disposition of this double jeopardy contention depended upon the answer to the threshold question whether Brown's separate trials, arising out of the single auto theft, constituted successive proceedings against him "for the same offence" within the meaning of the double jeopardy clause.[13] To determine whether the two offencs, joyriding and auto theft, were sufficiently distinguishable to permit successive prosecutions, the Court applied the *Blockburger* test: [14]

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not . . . . ."

*Brown, supra*, 432 U.S. at 166, 97 S.Ct. at 2225, *quoting Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Examining the elements of the two crimes, the Court concluded that joyriding and auto theft were the "same offence" for the purposes of the double jeopardy clause:

> As is invariably true of a greater and lesser included offense, the lesser offense—joyriding—requires no proof beyond that which is required for conviction of the greater—auto theft. The greater offense is therefore by definition the "same" for purposes of double jeopardy as any lesser offense included in it.

*Id.* at 168, 97 S.Ct. at 2226. Since the crimes constituted a single offense for dou-

---

11. The crime of joyriding was established by Ohio Rev.Code Ann. § 4549.04(D) (1973) which provided that "[n]o person shall purposely take, operate, or keep any motor vehicle without the consent of its owner." *Brown, supra*, 432 U.S. at 162 n. 1, 97 S.Ct. at 2223 n. 1.

12. This prosecution was conducted under Ohio Rev.Code Ann. § 4549.04(A) (1973) which provided that "[n]o person shall steal any motor vehicle." *Brown, supra*, 432 U.S. at 163 n. 2, 97 S.Ct. at 2224 n. 2.

13. The double jeopardy clause of the fifth amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." It is applicable to the states through the fourteenth amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

14. The *Blockburger* test derives from *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), a case in which a potential double jeopardy violation was created by the imposition of cumulative punishments for one criminal occurrence. The Court in *Brown* made it clear that the *Blockburger* test is applicable also to successive prosecutions:

> If two offenses are the same under this test for purposes of barring consecutive sentences at a single trial, they necessarily will be the same for purposes of barring successive prosecutions. . . . Where the judge is forbidden to impose cumulative punishment for two crimes at the end of a single proceeding, the prosecutor is forbidden to strive for the same result in successive proceedings.

*Brown, supra*, 432 U.S. at 166, 97 S.Ct. at 2225–26.

ble jeopardy analysis, the defendant's second prosecution and conviction were prohibited.[15]

The applicability of the *Blockburger* test to multiple prosecutions was reaffirmed by the Court's analysis in *Jeffers, supra.* The two proceedings in *Jeffers* arose from the defendant's leadership of a massive narcotics distribution network in Gary, Indiana. The first indictment returned against the defendant charged a conspiracy to distribute heroin and cocaine in violation of 21 U.S.C.A. § 846.[16] In a second and separate indictment, the defendant was charged with conducting a continuing criminal enterprise to violate the drug laws in violation of 21 U.S.C.A. § 848.[17] Prior to trial, the Government sought joinder of the charges under Fed.R.Crim.P. 8. Because the defendant successfully opposed this joinder, the two indictments were tried in different proceedings. At the first trial, the defendant was found guilty on the section 846 charge, and at the second trial, he was convicted of the section 848 offense. Contending that the section 846 conspiracy was a lesser included offense of section 848, the defendant asserted that this second prosecution violated the double jeopardy clause.

In analyzing this claim, the Court assumed, "arguendo, that § 848 does require proof of an agreement among the persons involved in the continuing criminal enterprise." *Jeffers, supra*, 432 U.S. at 149–50, 97 S.Ct. at 2216 (footnote omitted) (plurality opinion). The Court then applied the *Blockburger* test and found that section 846 was a lesser included offense of section 848 because of the requirement in section 848(b)(2)(A) of action in concert: "So construed, § 846 is a lesser included offense of § 848, because § 848 requires proof of every fact necessary to show a violation under § 846 as well as proof of several additional elements." *Id.* at 150, 97 S.Ct. at 2216 (plurality opinion). Despite this finding, however, the Court refused to reverse the defendant's second conviction. Instead, it held that the defendant's opposition to the Government's joinder motion constituted a waiver of his normal entitlement "to have charges on a greater and a lesser offense resolved in one proceeding . . .." *Id.* at 152, 97 S.Ct. at 2217 (plurality opinion).

*Harris, supra*, presented a factual pattern similar to those of *Brown* and *Jeffers.* During a robbery, the defendant's co-felon shot and killed a grocery store clerk. Sub-

---

**15.** The Court considered it to be of no import that the defendant had been convicted of the lesser offense prior to his conviction of the greater offense: "Whatever the sequence may be, the Fifth Amendment forbids successive prosecution and cumulative punishment for a greater and lesser included offense." *Brown, supra*, 432 U.S. at 169, 97 S.Ct. at 2227 (footnote omitted); *see Jeffers, supra*, 432 U.S. at 151, 97 S.Ct. 2207 (plurality opinion).

**16.** 21 U.S.C.A. § 846 (West 1972) provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

**17.** 21 U.S.C.A. § 848 (West 1972) provides, in pertinent part, the following:

    (a)(1) Any person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 10 years and which may be up to life imprisonment, to a fine of not more than $100,000, and to the forfeiture prescribed in paragraph (2) . . . ..

. . .

    (b) For purposes of subsection (a) of this section, a person is engaged in a continuing criminal enterprise if—

    (1) he violates any provision of this subchapter of subchapter II of this chapter the punishment for which is a felony, and

    (2) such violation is a part of a continuing series of violations of this subchapter of subchapter II of this chapter—

    (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and,

    (B) from which such person obtains substantial income or resources.

sequent to the defendant's conviction of felony-murder for his participation in the robbery and the resultant slaying, the defendant was convicted of robbery with firearms. Relying on a state court finding that " '[i]n a felony murder case, the proof of the underlying felony [here robbery with firearms] is needed to prove the intent necessary for a felony murder conviction,' " *id.*, 433 U.S. at 682, 97 S.Ct. at 2912 (per curiam), the Court held that the second prosecution violated the prohibition against double jeopardy: "When as here, conviction of a greater crime, murder, cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater one." *Id.* (footnote omitted) (per curiam).

Against this background of double jeopardy precedent, the appellant asks us to examine the relationship between a conspiracy charge and an accompanying *Pinkerton* vicarious liability charge. We thus turn our attention to *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

Walter and Daniel Pinkerton, brothers and co-conspirators in crime, were indicted for violations of the Internal Revenue Code. The indictment consisted of one conspiracy and ten substantive counts. Each brother was convicted under the conspiracy count and some of the substantive counts.

On appeal the defendants argued that these dual convictions constituted double jeopardy because some of the overt acts alleged in the conspiracy count were the substantive crimes of which they had been convicted. The defendants therefore contended that the substantive counts became merged in the conspiracy count. Rejecting this contention, the Court stated that "[i]t has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to

commit it are separate distinct offenses." *Pinkerton, supra*, 328 U.S. at 643, 66 S.Ct. at 1182. Thus, "[a] conviction for the conspiracy may be had though the substantive offense was completed. . . . And the plea of double jeopardy is no defense to a conviction for both offenses." *Id.* The Court further observed that "[i]t is not material that overt acts charged in the conspiracy counts were also charged and proved as substantive offenses . . . . The agreement to do an unlawful act is even then distinct from the doing of the act." *Id.* at 644, 66 S.Ct. at 1182 (footnote omitted).

Daniel Pinkerton also contended that he could not be convicted of the substantive crimes since those acts were committed by Walter only.[18] The Court rejected this claim too:

> The criminal intent to do the act is established by the formation of the conspiracy. Each conspirator instigated the commission of the crime. The unlawful agreement contemplated precisely what was done. It was formed for the purpose. The act done was in execution of the enterprise.

*Id.* at 647, 66 S.Ct. at 1184. Thus, Daniel was held to be vicariously liable for the acts of his brother, Walter.

Appellant Larkin examines the relationship between a conspiracy count and a *Pinkerton* vicarious liability count in terms of the *Blockburger* test as approved and applied in *Brown, Jeffers*, and *Harris*. He notes that the existence of the conspiracy between him and Parker is a *sine qua non* to a finding of liability under the vicarious liability counts. From this fact, he argues that the count one conspiracy offense is a lesser included offense of the substantive counts since every element of the former charge must be proved to establish the latter offense. Given this relationship between the counts, he argues that a retrial on the lesser offense, the conspiracy charge, would violate the double jeopardy clause,

---

18. Daniel was in prison at the time of Walter's commission of the crimes. *Pinkerton, supra*, 328 U.S. at 648, 66 S.Ct. 1180 (dissenting opinion).

because he has already been tried and acquitted of the greater offense, the *Pinkerton* vicarious liability counts.

Like the appellant, we find it somewhat difficult to square *Pinkerton* with the double jeopardy cases discussed *supra*.[19] The most difficult task of reconciling these cases is presented by *Harris, supra*, for the relationship between its felony murder count and the underlying charge, robbery with firearms, seems to be quite analogous to the connection between a *Pinkerton* vicarious liability count and the underlying conspiracy charge. Just as the intent necessary to prove felony murder was provided by the robbery with firearms charge in *Harris, see* 433 U.S. at 682, 97 S.Ct. 2912, the intent to establish Larkin's liability for the acts of his co-conspirator is supplied by the conspiracy charge. *See Pinkerton, supra*, 328 U.S. at 647, 66 S.Ct. 1180. Just as Harris's participation in a robbery created his liability for the shot of his partner, Larkin's formation of a conspiracy with Parker established Larkin's liability for Parker's embezzlement of union funds and falsification of union records. It would therefore appear that under *Harris*, the conspiracy charged against Larkin is a lesser included offense of the *Pinkerton* vicarious liability offenses, counts two through seven.

■ However, because of the procedural posture of this case, we need not make such a determination. Even if we assume that the conspiracy charge is contained in the vicarious liability counts, Larkin's double jeopardy right will not be violated by the retrial of the conspiracy count.

In *Brown, Jeffers*, and *Harris*, the defendants had been subjected to two independent proceedings. In each case, trial on either the greater or the lesser charge was followed by a prosecution of the other offense in a separate proceeding. In contrast, Larkin was subjected to only one trial in which the conspiracy and vicarious liability counts were tried simultaneously.[20] Thus, even assuming the validity of Larkin's ar-

19. There are three facets of *Pinkerton* which might bear double jeopardy analysis. First, there is the proposition that a conspiracy to commit an act and the commission of that illegal act are distinct crimes, and, as a result, cumulative punishment imposed on the conspirator who committed the act is not improper under the double jeopardy clause. The argument that the double jeopardy holding of *Pinkerton* related solely to this proposition is supported by much of the opinion's language, *see*, p. 1366, *supra*, and by the Supreme Court's characterization of the *Pinkerton* double jeopardy holding in *Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975):

> [t]he conspiracy to commit an offense and the subsequent commission of that crime normally do not merge into a single punishable act. *Pinkerton v. United States, supra*, 328 U.S., at 643, 66 S.Ct., at 1181. Thus, it is well recognized that in most cases separate sentences can be imposed for the conspiracy to do an act and for the subsequent accomplishment of that end.

*Id.* at 777–78, 95 S.Ct. at 1290; *see id.* at 781–82, 95 S.Ct. 1284.

Second, there is the principle that a conspirator's agreement to commit a crime renders him liable for his co-conspirator's commission of *that* crime. Third, there is the rule that a conspirator who agrees to commit crime X may

sometimes be held liable for crime Y committed by his co-conspirator. It is unclear to what extent the double jeopardy language in *Pinkerton* applies to these two vicarious liability situations. Moreover, *Harris, supra*, may necessitate a reexamination of *Pinkerton's* double jeopardy reasoning. In view of our disposition of this case, *see infra*, we need not examine the scope of *Pinkerton's* holding, or the extent, if any, to which *Pinkerton* has been modified by *Harris*.

20. The Government argues that *Brown, Jeffers*, and *Harris* are distinguishable from the instant case because in each of those cases a retrial on either the greater or the lesser offense followed a conviction on the other charge, whereas in this case there was a judgment of acquittal on the purported greater offense.

We have serious doubts about the validity of the Government's conclusion. In *Brown* and *Jeffers* the Court stated that the order of the two trials on the greater and lesser offenses was irrelevant for double jeopardy purposes. *See* n. 15 *supra*. In reaching this conclusion, the Court placed great stress on the fact that the double jeopardy clause not only prohibits the imposition of double punishment for the same offense, but also prevents the incurable injury caused a defendant who must run the gauntlet twice for the same offense. *See Jeffers, supra*, 432 U.S. 150–51 & nn. 17 & 18, 97

gument that the conspiracy charge is a lesser included offense of the *Pinkerton* vicarious liability counts, Larkin's position is indistinguishable from a defendant who was tried on a murder charge and a manslaughter count in the alternative. Such simultaneous jeopardy for greater and lesser included offenses is clearly proper.[21] *See Jeffers, supra*, 432 U.S. at 152 & n. 20, 97 S.Ct. at 2217 & n. 20 ("a defendant is normally entitled to have charges on a greater and a lesser offense resolved in one proceeding") (plurality opinion).

■ Furthermore, the fact that the jury in Larkin's trial acquitted him of the *Pinkerton* counts and hung on the conspiracy charge, thereby causing a mistrial as to the latter count and allowing the Government to retry the conspiracy charge, does not dictate a different result. It is of course axiomatic that Larkin may not be retried on the charges of which he was acquitted. *See Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970); *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). However, it is equally well settled that a defendant may be retried on a lesser offense, of which he was convicted at an initial trial, after that conviction was reversed on appeal; and that that result obtains even though the first trial also resulted in a verdict of acquittal on a greater offense. *See Price, supra*, 398

U.S. at 326–27, 90 S.Ct. 1757. In *Price* the defendant had been tried simultaneously on murder and manslaughter charges and had been convicted of the lesser offense. The defendant successfully appealed that conviction, and the judgment was reversed. In reversing a murder conviction obtained in a second trial, on the ground that the acquittal on that charge in the first trial barred its reprosecution, the Court made it clear that a retrial on the manslaughter charge was proper:

> [A] concept of continuing jeopardy . . . has application where criminal proceedings against an accused have not run their full course . . . .

> The continuing jeopardy principle necessarily is applicable to this case. Petitioner sought and obtained the reversal of his initial conviction for voluntary manslaughter by taking an appeal. Accordingly, no aspect of the bar on double jeopardy prevented his retrial for that crime.

*Id.*

■ Larkin stands in a position identical to the defendant in *Price*. It is clear that the concept of continuing jeopardy normally applies to a mistrial caused by a deadlocked jury.[22] *See, e. g., United States v. Sanford*, 429 U.S. 514, 97 S.Ct. 20, 50 L.Ed.2d 17 (per curiam); *Downum v. United States*, 372 U.S. 734, 736, 83 S.Ct. 1033,

S.Ct. 2207; *Brown, supra*, 432 U.S. at 165–66, 97 S.Ct. 2221. Reprosecution on a lesser offense in a second trial after an acquittal on the greater charge in the first would seem to cause such an injury because "[t]he risk of conviction on the greater means nothing more than a risk of conviction upon proof of all the elements of the lesser plus proof of the additional elements needed for the greater." *Jeffers, supra*, 432 U.S. at 151 n. 17, 97 S.Ct. at 2216 n. 17; *accord, United States v. Tsanas*, 572 F.2d 340, 345 n. 6 (2d Cir.), *cert. denied*, 435 U.S. 995, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978). In any event, due to our disposition of this case, we leave consideration of this issue to another day.

**21.** If Larkin had been convicted of the conspiracy count and the vicarious liability charges, and cumulative sentences had been imposed, or if he had requested, and had been denied, a jury instruction on lesser included offenses, we

would be forced to reach the question whether the conspiracy charge was a lesser included offense of the *Pinkerton* vicarious liability offenses. *See Jeffers, supra*, 432 U.S. at 153–55, 97 S.Ct. 2207. Since neither event occurred, however, the issue is not properly before us.

**22.** The appellant does not contend that prosecutorial abuse created the mistrial. Nor does he argue that the mistrial was declared by the trial court under an aberrant procedure. Therefore, cases such as *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *United States v. Gordy*, 526 F.2d 631 (5th Cir. 1976); and *Webb v. Court*, 516 F.2d 1034 (3d Cir. 1975), are inapposite.

10 L.Ed.2d 100 (1963); *Green, supra,* 355 U.S. at 188, 78 S.Ct. 221. Furthermore, an acquittal on a greater offense does not preclude a retrial on a lesser offense to which continuing jeopardy has attached, and this result obtains whether the applicability of continuing jeopardy results from an appellate reversal of a conviction as in *Price* or from a mistrial caused by a deadlocked jury. *Accord, United States v. Scott,* 150 U.S.App.D.C. 323, 464 F.2d 832 (D.C.Cir. 1972); *Forsberg v. United States,* 351 F.2d 242 (9th Cir. 1965), *cert. denied,* 383 U.S. 950, 86 S.Ct. 1209, 16 L.Ed.2d 212 (1966). Therefore, Larkin may be retried on the conspiracy charge unless the principles of collateral estoppel dictate a different result, an issue to which we now turn our attention.[23]

## II

■ Collateral estoppel does not have the surgical precision found in double jeopardy, for its basics are founded in equity and therefore command some flexibility. Collateral estoppel need not be composite or synoptic in application, but instead can apply to a single element of a trial.

Since collateral estoppel can apply to a phase, an issue of fact, or congeries of fact with respect to a second trial, to determine its applicability to this multicount, multi-issued criminal trial, we must examine the many parts, while we keep in view the whole. The intelligent application of collateral estoppel requires that we atomize the charges; we must examine the various counts, the testimony, the jury's verdict. Each requires a parsing in comparison with the other in order to come to a conclusion whether or not collateral estoppel is applicable to one or more of the issues which are to be covered in the second trial.

The complicating factors here are the multicount indictment in the first trial, the inability of the jury to agree, and the find-ings by the jury of not guilty with respect to some aspects of the charges. But these complicating elements and components do not relieve us of our judicial duty to determine whether collateral estoppel is applicable to one or more of the components involved. While we do not test ourselves as three more jurors in the case, we are compelled to determine as best we can what makes the jury's verdict cohere. The geodetics required of us is not an easy one; we must examine the record with great care.

Larkin contends that the collateral estoppel principles enunciated in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), prevent the retrial of the count one conspiracy charge. He argues that the jury's judgment of acquittal on counts two through seven, the *Pinkerton* vicarious liability counts, necessarily rested on its finding that Larkin was not the member of a conspiracy with Parker. Since that fact has been determined adversely to the Government, he argues, the prosecution may not retry count one. We agree with him only to the extent that count one charges a conspiracy to embezzle union funds and falsify union records.

■ In *Ashe, supra,* the Supreme Court held that the double jeopardy clause embodies principles of collateral estoppel, and, as a result, the Government may not relitigate issues of fact that had been decided in the defendant's favor in a previous prosecution. The Court stated that the double jeopardy clause mandates the following inquiry:

> Where a previous judgment of acquittal was based on a general verdict, as is usually the case, this approach requires a court "to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consider-

---

**23.** The protection afforded a defendant by the collateral estoppel principles of *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) is additional to that accorded by the *Blockburger* test. *See Brown, supra,* 432 U.S. at 166 n. 6, 97 S.Ct. 2221.

ation." The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings."

*Id.* at 444, 90 S.Ct. at 1194 (footnote omitted).

Larkin wishes to foreclose from consideration in a second trial the issue whether he was a member of a conspiracy with Parker.[24] We need not engage in an extensive search to determine whether the jury's verdict of acquittal on the vicarious liability counts necessarily rested on its conclusion that Larkin was not the member of a conspiracy with Parker, for the jury that rendered this judgment also hung on count one, the conspiracy count. No rational jury could have absolved Larkin of liability for Parker's crimes because of the absence of a conspiracy between the two, while it simultaneously failed to acquit Larkin on the conspiracy charge itself. The jury's verdict must have rested elsewhere.[25] *Accord, United States v. Scott,* 150 U.S.App.D.C. 323, 464 F.2d 832 (D.C.Cir.1972) (jury's deadlock on robbery count indicates that judgment of acquittal on armed robbery count was not based on finding that defendant was not a robber).

█ This obvious interpretation of the jury's verdicts on the various counts does not end our task, however, for the Government wishes to retry Larkin on count one which still charges him with conspiring to embezzle union funds and falsify union records. The Government proposes this reprosecution despite the first jury's refusal to find that Larkin was vicariously liable for the commission of those crimes. We must determine whether the jury's not guilty verdict on counts two through seven precludes Larkin's retrial on the theory that he conspired to commit these crimes.[26]

Our first task under *Ashe, supra,* is to pinpoint the issues which the jury deliberated in judging Larkin's culpability under counts two through seven. Then we must determine the issue or issues upon which the jury could rationally have rested its verdict of acquittal.

Our examination of the record, with particular reliance upon the indictment and the charge to the jury, leads us to discern four potential bases for the jury's conclusion. The jury might have found that Larkin did not conspire with Parker; that Parker did not commit the crimes of embezzlement or record falsification during the existence of the conspiracy; that Parker did not commit those crimes in furtherance of the alleged conspiracy with Larkin; or that Larkin did not foresee that Parker would commit those crimes as a necessary or natural result of the conspiracy between the two.

We have shown *supra* that the jury did not acquit on the vicarious liability charges because of a finding that Larkin and Parker did not conspire.[27] Furthermore, the fact that Parker committed the crimes during the course of the alleged conspiracy was

---

**24.** Larkin contends that count one *in toto* cannot be retried, and thus we discuss here the foreclosure of retrial on that count insofar as it alleges any conspiracy with Parker—one entered into to accomplish any of the five purposes listed in count one. The fact that the conspiracy count charges a conspiracy specifically to embezzle union funds and falsify union records deserves distinctive treatment, and we therefore focus particularly on those objects *infra.*

**25.** We note that the record is almost totally devoid of evidence linking Larkin in any way to the embezzlement and subsequent coverup in the union's records and that, most likely, the acquittal occurred because of this insufficiency of evidence.

**26.** Collateral estoppel may be applied to one count of a multi-count indictment, or to one part of a single count. *See United States v. Mespoulede,* 597 F.2d 329, 334–35, 336–37 (2d Cir. 1979); *cf. Blackburn v. Cross,* 510 F.2d 1014 (5th Cir. 1975) (application of collateral estoppel to evidentiary fact of prior convictions); *Wingate v. Wainright,* 464 F.2d 209, 212–15 (5th Cir. 1972) (same).

**27.** We observe again that here we are discussing the existence of a conspiracy *vel non,* entered into for any of the five purposes listed in count one, as distinguished from a conspiracy with the particular objects of embezzlement and falsifying union records.

amply established by extensive direct testimony and documentary evidence none of which was controverted by the appellant. No rational jury could have reached a verdict of acquittal on this basis either. *See Ashe, supra*, 397 U.S. at 438, 444–45 & n. 9, 90 S.Ct. 1189.[28] Accordingly, the jury must have believed either that Parker did not commit the crimes of embezzlement and record falsification in furtherance of a conspiracy with Larkin, or that Larkin did not foresee that Parker would embezzle and falsify records.

Under either of these alternative grounds for the jury's verdict of acquittal on counts two through seven, retrial of a conspiracy to embezzle funds or falsify union records is foreclosed. At the proposed second trial, the Government would have to show that Larkin and Parker agreed to embezzle union funds and to falsify union records. If Larkin and Parker agreed to commit those acts, it must necessarily be true *both* that the commission of those crimes would be foreseeable to Larkin *and* that the crimes were committed by Parker in furtherance of a conspiracy between him and Larkin. However, the first jury's acquittal necessarily means that at least one of those factual propositions has been decided adversely to the Government. Accordingly, Larkin may not be retried for conspiring to embezzle union funds or to falsify union records. The district court is directed to strike from the indictment that portion of count one which charges Larkin with conspiring to attain those purposes.

AFFIRMED in PART; REVERSED in PART.

---

**28.** The Court approvingly quoted the following statement:

"If a later court is permitted to state that the jury may have disbelieved substantial and uncontradicted evidence of the prosecution on a point the defendant did not contest, the possible multiplicity of prosecutions is staggering. * * * In fact, such a restrictive definition of 'determined' amounts simply to a rejection of collateral estoppel, since it is impossible to imagine a statutory offense in which the government has to prove only one element or issue to sustain a conviction." *Ashe, supra*, 397 U.S. at 444 n. 9, 90 S.Ct. at 1194–95 n. 9, *quoting* Mayers & Yarborough, Bis Vexari: New Trials and Successive Prosecutions, 74 Harv.L.Rev. 1, 38–39 (1960).