**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Anthony "Tony" CAUCCI, Defendant–Appellant.**

**No. 80–5144
Summary Calendar.**

United States Court of Appeals, Fifth Circuit.
Unit B

Jan. 27, 1981.
Rehearing Denied March 23, 1981.

Michael H. Tarkoff, Miami, Fla., for defendant--appellant.

Joel M. Gershowitz, Washington, D. C., for plaintiff -appellee.

Before RONEY, FRANK M. JOHNSON, Jr., and HENDERSON, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Appellant Anthony Caucci appeals from his conviction, after trial by jury, on the third count of a three count indictment charging him with falsely testifying before a grand jury.[1] The district court granted Caucci's motion for judgment of acquittal on counts one and two.

Before becoming an undercover government agent Louis Maricondi borrowed $15,-000 from Tony "T.P." Plate, a reputed Florida loan shark, at a usurious rate of interest.[2] Maricondi had asked either Caucci or Caucci's father to borrow the money from Plate, and Caucci's father obtained the money from Plate. Maricondi, ostensibly to open a new business, went to Florida as an undercover agent on a government investigation of Plate and others. Maricondi asked the government to advance him the unpaid amount of that loan because, as he told the government, it would be very difficult to start a business in Florida while he was indebted to Plate. The government asked Maricondi to find someone who could

---

1. 18 U.S.C. § 1623.

2. Maricondi stated that he paid $400.00 interest per week on the $15,000 loan. Over a two year period he paid about $40,000, including payments on the principal, and yet still owed Plate $10,000.

verify the existence of that loan and also renegotiate its repayment terms with Plate. In a recorded telephone conversation Maricondi asked Caucci to talk to Plate about Maricondi's debt; Maricondi and Caucci disagreed on whether the debt was $10,000 or $15,000. During the conversation Caucci stated that he, Caucci, owed Plate $1,000 and also referred to a prior debt which he had owed to Plate and which he had paid when he became frightened. In a second recorded conversation, Caucci told Maricondi that Plate had agreed to new terms concerning Maricondi's debt which were more favorable to Maricondi.

A grand jury, investigating Plate and others, subpoenaed Caucci to testify concerning Plate's loansharking activities. Caucci testified under oath that he had never borrowed any money from Plate and that he had never told anyone he had borrowed money form Plate. In addition, he testified as follows:

A JUROR: You said you never borrowed any money personally from Anthony Plate. Have you ever had any associates of yours that ever borrowed any money? THE WITNESS [CAUCCI]: Not that I know of. If anybody did, they didn't tell me about it. People don't really tell things if they borrow money like that.

\* \* \* \* \* \*

Q. (By Mr. Schwartz) Nobody ever told you that he owed Plate money, a loansharking loan?
A. Not that I know of, and if they did, I wouldn't want to pay any attention, wouldn't want to know.

The first count of the three count indictment charged that Caucci had made a false declaration before the grand jury when he said that he had never borrowed any money from Plate. The second count charged that he had lied when he testified that he had not told anyone that he had borrowed money from Plate. The third count charged that he had lied when he stated that none of his associates had ever borrowed money

from Plate. The district court did not explain its reasons for entering its judgment of acquittal on counts one and two, but evidently the court concluded that the government had failed to establish beyond a reasonable doubt that Caucci had borrowed money from Plate.

## SUFFICIENCY OF THE EVIDENCE

Caucci's first contention on appeal is that the evidence was insufficient to support his conviction because the government did not establish that his statements were knowingly false declarations made with the specific intent to commit the crime of perjury. He emphasizes that the words "associates" and "loan shark" in the questions are vague and ill-defined.[3] Caucci concedes that the government was required to prove only that one of the two questions set out in count three was answered perjuriously. *See United States v. Abrams*, 568 F.2d 411, 419 (5th Cir.), *cert. denied*, 437 U.S. 903, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978). Caucci argues that the government failed to establish that he knew that Maricondi had *borrowed* money from Plate. Although the words "loan" and "borrowed" were never used in the phone conversations between Maricondi and Caucci, the jury could certainly conclude from the evidence that Caucci knew that Maricondi's indebtedness to Plate had resulted from a loan. Actual knowledge of falsity may be proved from circumstantial evidence. *United States v. Cuesta*, 597 F.2d 903, 920–21 (5th Cir.), *cert. denied*, 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 377 (1979).

The evidence indicated that Caucci was intimately familiar with the loan transaction between Plate and Maricondi. Maricondi had asked Caucci or Caucci's father to negotiate the loan, Caucci and Maricondi had discussed the amount of Maricondi's debt to Plate, and Caucci renegotiated the debt with Plate. In reviewing the sufficiency of the evidence we must view the

---

**3.** Appellant in his brief has misquoted the second question, referring to a "loan shark loan," which is the indictment version of the question, rather than the question proved at trial to have been asked by the grand jury.

evidence and all inferences that reasonably may be drawn from it in the light most favorable to the government. *Hamling v. United States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974); *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1941); *United States v. Rodgers*, 624 F.2d 1303, 1306 (5th Cir. 1980). We conclude that the evidence was amply sufficient to show that Caucci knew that Maricondi had borrowed money from Plate.

Caucci also argues that, because the evidence failed to establish that he knew that Maricondi had borrowed from Plate at a usurious interest rate, he could not have lied when he negatively answered the question "Nobody ever told you that he owed Plate money, a loansharking loan?" Caucci was familiar with the loan transaction, having been asked by Maricondi to speak to Plate about the loan to Maricondi and it is most improbable that Caucci could have renegotiated the terms of that loan without knowing or learning that the interest rate was unsurious. In the phone conversations with Maricondi, Caucci made references to the fact that he (Caucci) had been indebted to Plate on two occasions and had once repaid him because he became frightened. Further, Caucci told Maricondi that Plate was "not gonna bother nobody" because "He's got enough heat on him" and added that "If you wait, they're liable to put him away." From the evidence that Caucci knew of the terms of Plate's loan to Maricondi and that Plate was a loan shark, the jury was entitled to conclude that Caucci knew that Maricondi's loan was a "loansharking loan."

Finally Caucci argues that, because the word "associates" was subject to varying interpretations, he could not have deliberately answered the grand jury falsely. It is noted that earlier in his testimony before the grand jury Caucci asked for clarification of the term "associates" when asked if he had ever borrowed any money from anyone associated with Anthony Plate. Caucci did not ask for clarification when later asked about any of *his* associates. He answered without evading the question or qualifying his answer and the record shows that he did not evidence any hesitancy in answering the question as presented. *See United States v. Whitaker*, 619 F.2d 1142, 1148 (5th Cir. 1980).

Caucci relies on *Bronston v. United States*, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), in which the Court reversed the defendant's perjury conviction because the prosecutor failed to follow a non–responsive but literally true answer with a more precise question. Although *Bronston* expressly declined to reach the issue of the ambiguity of the question, it did note that "[p]recise questioning is imperative as a predicate for the offense of perjury." *Id.* at 356, 362, 93 S.Ct. at 599, 601. *Bronston* was concerned with a situation where the declarative statement that was made was literally true regardless of the context of the question asked, rather than with the situation where a "yes or no" answer was given, the truth of which can be ascertained only in the context of the question asked. *See United States v. Cuesta, supra*, 597 F.2d at 920. There is no *Bronston* situation in this case.

■ Although the questions at issue in this case could perhaps have been more clear or precise, we cannot conclude that they were so imprecise as a matter of law that they were insufficient to support a perjury conviction. *United States v. Whitaker, supra*, 619 F.2d at 1148–49; *United States v. Calimano*, 576 F.2d 637, 640–42 (5th Cir. 1978).

The function of this Court on review of the sufficiency of the evidence is to determine whether, viewing the evidence in the light most favorable to the government, the jury could reasonably conclude that the evidence is inconsistent with every reasonable hypothesis of innocence. *United States v. Rodgers, supra*, 624 F.2d at 1306; *United States v. Gonzalez*, 617 F.2d 104, 106 (5th Cir. 1980). In other words, the standard of review is whether, based on the evidence, a reasonably minded jury must necessarily entertain a reasonable doubt of the defendant's guilt. *United States v. Gonzalez, supra*, 617 F.2d at 106.

We conclude that the evidence was sufficient to support Caucci's conviction.

## JURY INSTRUCTIONS

Caucci contends that the district court erred when it reinstructed the jury on the offense without also redefining "knowingly" or restating that the crime required proof of specific intent. He also contends that the district court erred by giving an instruction that shifted the burden of proof from the government to defendant.

Within an hour after beginning deliberations, the jury requested a supplementary charge on the "material four things you said we must make a decision on." The court repeated its initial instruction on those elements,[4] prefacing it with the caution that "[y]ou must consider the instructions as a whole, and not give any part of it more weight than any other part." In its initial instruction the court fully instructed the jury on the definition of "knowingly" and on the meaning and definition of specific intent, and also emphasized that the jury must consider the instructions as a whole.

■ This Court's decision in *United States v. Gaultney*, 606 F.2d 540 (5th Cir. 1979), clearly answers Caucci's contention. There, the defendant unsuccessfully argued that the court erred in its supplemental charge to the jury by refusing to recharge on specific intent and reasonable doubt, and also by inaccurately defining intent by failing to refer to specific intent. As here, the trial judge expressly cautioned the jury in the supplemental charge "not to consider his supplemental charge in an isolated context, but to consider the entire charge as given, ascribing no greater weight to the supplemental charge than to the original charge." *Id.* at 547–48. This Court concluded that "[i]n so doing, the district court

took an appropriate and previously approved step to ensure a balanced charge so as to avoid any possibility of prejudice to the defendant. *United States v. Sutherland*, 428 F.2d 1152, 1157–58 (5th Cir. 1970), *cert. denied*, 409 U.S. 1078, 93 S.Ct. 698, 34 L.Ed.2d 668 (1972)." *Id.* at 548. Also here, as in *Gaultney*, the original and supplemental charges, when considered as a whole, sufficiently instructed the jury on the applicable law.

Caucci relies on *Bland v. United States*, 299 F.2d 105 (5th Cir. 1962), but *Bland* is clearly distinguishable. There, the indictment charged the defendants with bringing aliens into this country knowing that they were not entitled to enter. In reinstructing the jury four hours after they retired, the judge failed to remind them that guilty knowledge was an essential element of the offense. The judge merely reread the applicable statute to the jury, which was prejudicial error to the defendants because the statute itself did not expressly state that the offense must be committed willfully or knowingly, and thus the jury was not reinstructed on the defendants' sole defense.

The district court in this case did reinstruct the jury that in order to convict they must find that Caucci *knowingly* made the false declarations. Furthermore, there is no indication that the court in *Bland* cautioned the jury in its supplemental charge to consider the instructions as a whole without giving more weight to one part than to another. The district court in this case took proper steps to avoid prejudice to the defendant by twice stating in its supplemental instruction that all the instructions must be considered as a whole. *See United States v. Meadows*, 598 F.2d 984, 990 (5th Cir. 1979). Evaluating the trial court's actions in the light of the totality of the circumstances and considering the complete instructions

---

4. The trial court, having determined as a matter of law and having so instructed the jury in its original instruction that the defendant's declarations before the grand jury were material to possible crimes being investigated by the grand jury, and thus that the fourth element of the elements of the crime had been proved, did not reinstruct the jury on that element. The court reinstructed the jury that the prosecution was required to prove beyond a reasonable doubt that: (1) Caucci appeared before the grand jury; (2) he was sworn and on his oath when he so appeared; and (3) "that being duly sworn and upon his oath, the said defendant did knowingly make false declarations and [sic] proceedings before a Federal Grand Jury."

given, we find no reversible error in the trial court's failure to reinstruct the jury on the definitions of specific intent or "knowingly." *United States v. Colatriano,* 624 F.2d 686, 690 (5th Cir. 1980).

■ Caucci also argues that the district court's original instruction that "[i]t is ordinarily reasonable to infer that a person intends the natural and probable consequences of acts knowingly done or knowingly committed" erroneously shifted the burden of proof to the defense. Caucci did not raise this objection at trial; there he objected that the instruction on specific intent made the instruction on general intent unnecessary.

Fed.R.Crim.P. 30 provides that "[n]o party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." *See Henderson v. United States,* 425 F.2d 134, 144 (5th Cir. 1970). Because Caucci failed to state to the trial court as a ground of his objection to the jury instruction that the sentence now objected to on appeal erroneously shifted to him the burden of proof, we must consider whether the court's instruction constituted "plain error" within the meaning of Fed.R.Crim.P. 52(b).[5] *United States v. Freeman,* 619 F.2d 1112, 1123 (5th Cir. 1980); *United States v. Pena,* 527 F.2d 1356, 1365 (5th Cir.), *cert. denied,* 426 U.S. 949, 96 S.Ct. 3168, 49 L.Ed.2d 1185 (1976); *United States v. Jackson,* 569 F.2d 1003, 1010 (7th Cir.), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3096, 57 L.Ed.2d 1137 (1978).

■ Instructions to the jury that shift the burden of proof on intent from the government to the defendant constitute plain error where the sole defense is lack of intent. *Mann v. United States,* 319 F.2d 404, 410 (5th Cir. 1963), *cert. denied,* 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964). Indeed, such burden–shifting instructions stating a presumption rather than an infer-

ence of intent violate the Due Process Clause. *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Tyler v. Phelps,* 622 F.2d 172 (5th Cir. 1980). However, this Court in *United States v. Chiantese,* 560 F.2d 1244, 1255 (5th Cir. 1977) (en banc), *cert. denied,* 441 U.S. 922, 99 S.Ct. 2030, 60 L.Ed.2d 395 (1979), held that a burden–shifting instruction does not automatically require reversal. A burden–shifting instruction such as that given in *Mann v. United States, supra,* is not plain error where there is evidence before the jury of objective conduct demonstrating criminal intent. *United States v. Chiantese,* 582 F.2d 974, 977 & n.11 (5th Cir. 1978) (panel on remand from en banc court); *United States v. Spiegel,* 604 F.2d 961, 970 (5th Cir. 1979).

■ The sentence of the instruction which is at issue in this case is nearly identical to language contained in the instructions given in *United States v. Freeman, supra,* 619 F.2d at 1123–24, and *United States v. Wilkinson,* 460 F.2d 725, 733 (5th Cir. 1972). The language in *Wilkinson's* instruction was approved by this Court's en banc decision in *United States v. Chiantese,* 560 F.2d 1244, 1255–56 (5th Cir. 1977), *cert. denied,* 441. U.S. 922, 99 S.Ct. 2030, 60 L.Ed.2d 395 (1979). *Freeman* and *Wilkinson,* which held that such language does not shift the burden of proof on intent to the defendant, are dispositive of Caucci's contention. Because the instruction given by the district court did not shift the burden of proof on intent to Caucci, we conclude that there was no reversible error in the instruction.

## PROSECUTION'S CLOSING ARGUMENT

■ Finally, Caucci contends that the prosecutor's reference to a $1000 "loan" from Plate to Caucci was prohibited by the doctrine of collateral estoppel because his acquittal on count one (charging him with

---

5. Fed.R.Crim.P. 52(b) provides:
    Plain errors or defects affecting substantial rights may be noticed although they were not

brought to the attention of the court.

falsely testifying that he had never borrowed money from Plate) necessarily constituted a determination that he had not borrowed money from Plate. Caucci's motion for a mistrial on the basis of the prosecutor's reference to the loan was denied.

■ The collateral estoppel doctrine applies "when an issue of ultimate fact has once been determined by a valid and final judgment." *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *United States v. Hartley*, 612 F.2d 1009, 1010 (5th Cir. 1980); *United States v. Larkin*, 605 F.2d 1360, 1369–70 (5th Cir. 1979), *cert. denied*, 446 U.S. 939, 100 S.Ct. 2160, 64 L.Ed.2d 793 (1980); *United States v. Mock*, 604 F.2d 341, 343–44 (5th Cir. 1979). The rule of collateral estoppel also prevents redetermination of evidentiary facts as well as ultimate facts. *United States v. Lee*, 622 F.2d 787, 789 (5th Cir. 1980).

■ Collateral estoppel may operate in two distinct ways: (1) it may completely bar a subsequent prosecution; or (2) although the subsequent prosecution may proceed, it may operate to bar the introduction or argumentation of certain facts necessarily established in a prior proceeding. *United States v. Mock, supra*, 604 F.2d at 338. Although double jeopardy necessarily includes collateral estoppel, collateral estoppel does not equate with or include double jeopardy. *Id.* at 338 n.1. In this case only the second of the two types of collateral estoppel cases discussed in *Mock* is relevant.

Caucci cites no case in which the doctrine of collateral estoppel has been applied in the context of a single proceeding. Cases involving this doctrine have been concerned with attempts to relitigate issues resolved in prior trials or proceedings. *E. g., United States v. Larkin, supra*, 605 F.2d at 1369–71; *United States v. Lee, supra*, 622 F.2d 787.

■ A contention similar to that made by Caucci was rejected in *United States v. Buttram*, 432 F.Supp. 1269 (W.D.Pa.1977), *aff'd without opinion*, 568 F.2d 770 (3d Cir.), *cert. denied*, 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 84 (1978). There, the defendant

Buttram argued that his acquittal by the jury on the first two counts of a three count indictment amounted to a finding that a certain person was not Buttram's agent. Buttram contended that the doctrine of collateral estoppel barred conviction on the third count because a finding that the agency relationship existed was essential to a conviction on count three, and the jury had necessarily rejected the existence of an agency relationship in reaching its verdict on the first two counts. The district court held that the collateral estoppel doctrine of *Ashe v. Swenson, supra*, applies to "a defendant facing two separate trials but clearly [has] no relevance to one defendant facing *one* trial on two or more counts." 432 F.Supp. at 1273–74 (emphasis in original). *Buttram* is distinguishable because there the jury acquitted on two counts of a three count indictment, while here the district court granted Caucci's motion for judgment of acquittal at the close of all the evidence, before closing argument. Although noting this distinction, we conclude that it does not support Caucci because we do not believe the doctrine of collateral estoppel is to be applied in the context of a single trial.

■ Because Caucci's motion for a mistrial was not made until after the conclusion of the summation and because he failed to object to the prosecutor's comments when made, we may grant relief only if he can show, in the context of the trial, that the remarks amounted to plain error under Fed.R.Crim.P. 52(b). *United States v. Soto*, 591 F.2d 1091, 1101 (5th Cir.), *cert. denied*, 442 U.S. 930, 99 S.Ct. 2862, 61 L.Ed.2d 298 (1979). We conclude that Caucci's conviction on count three was not barred by collateral estoppel, and that the district court's denial of Caucci's motion for a mistrial was not plain error since, upon an examination of the entire record, substantial prejudice to Caucci does not appear.

AFFIRMED.