NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0421n.06

No. 17-2514

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 13, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JAMES WIGGINS, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:    **BATCHELDER, SUTTON, and WHITE, Circuit Judges.**

**ALICE M. BATCHELDER**, **Circuit Judge**.   James Wiggins was tried by a jury on charges of aiding and abetting carjacking in violation of 18 U.S.C. § 2119(1) and use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c).  The jury found Wiggins guilty of the carjacking offense but not guilty of using a firearm, and the court sentenced him to 151 months in prison—a downward variance from the Sentencing Guidelines range of 168–210 months.  On appeal, Wiggins argues that the district court violated his right to a fair trial by admitting Rule 404(b) evidence and then denying his motion for a mistrial; that the evidence is not sufficient to support the verdict and the district court erred in denying his Rule 29 motion for judgment of acquittal and his Rule 33 motion for a new trial; that he is entitled to a new trial due to ineffective assistance of counsel; and that his sentence is procedurally and substantively

unreasonable. We decline to address on direct appeal the ineffective-assistance-of-counsel claim, and we **AFFIRM** the judgment of the district court.

**I.**

Between three and five o'clock in the morning on September 12, 2016, James Wiggins and his friend Tyree Darrell went out looking for cash. Reginald Carr was sitting in his vehicle waiting for a methadone treatment clinic to open when Wiggins and Darrell approached him. Carr testified that the two men asked to buy a cigarette, and when he told them he did not have one, the shorter of the men came around to his driver's side. Carr, feeling threatened, got out of the car and brandished a Ruger .22 automatic, whereupon Wiggins and Darrell walked away. Carr then walked over to Katherine Strickland, a patient who also was waiting in her car for the clinic to open, and asked her to honk her horn if she saw the men coming back. Carr returned to his vehicle, and a few minutes later Wiggins and Darrell returned. Carr testified that the shorter of the two men came around to the passenger's side and started shooting. Carr was shot three times as he bolted from the vehicle, leaving behind his cell phone. The man shot at him one more time as he ran away. Strickland did not see the shooting (she was bent over in her car to avoid the bullets) but estimated that she heard seven to ten shots.

Wiggins and Darrell then fled in Carr's vehicle and soon abandoned it. Six days after the carjacking, the police tracked Carr's cell phone to a car in Detroit and established surveillance on the car. After observing the car run a red light, the police pulled it over and found Wiggins in the backseat. When Wiggins exited the car, an officer saw a cell phone stuffed between the seats near where Wiggins had been sitting. Wiggins said the phone was his; police later verified that the phone was the one that had been in Carr's vehicle during the carjacking.

On October 5, 2016, Wiggins entered a plea of not guilty to both counts of the indictment. At the final pretrial conference, counsel for Wiggins inquired about the court's policy on Jencks Act materials. The court acknowledged that the law does not require that those materials be turned over "until . . . the individual testifies," but nevertheless stated that the government should give all Jencks Act prior statements and witness materials to counsel for Appellant on or before May 8, 2017—two days before the scheduled start of the trial. However, the trial was later postponed to August 8, 2017, and the deadline for the Jencks Act materials was apparently not adjusted. Shortly prior to trial, Wiggins's attorney filed a motion in limine that sought to exclude, among other things, any reference to (1) Wiggins's long criminal record of stealing cars and (2) criminal history of any sort. The court granted the motion in part, ruling that the government was prohibited from referencing "the defendant's prior criminal history" and was also barred from making "any reference to being in the system before."

During the trial, the prosecutor had the following exchange with Darrell, which Wiggins claims violated the court's order on the motion in limine:

| | |
|---|---|
| Prosecutor: | And have you stolen cars with Mr. Wiggins on a prior occasion? |
| Darrell: | Yes. |
| Prosecutor: | Have any of them involved carjackings? |
| Darrell: | No. |
| Prosecutor: | Have any of them involved firearms? |
| Darrell: | No. |

Counsel for Wiggins did not object. However, immediately after these questions were asked, the jury took a break, and Wiggins's trial counsel contacted the court's chambers indicating that he wanted to make a motion for a mistrial. The court did not take up the motion before the trial resumed, and Wiggins's counsel therefore had to cross-examine Darrell without a ruling. Seeking to use Darrell's testimony to Wiggins's benefit by attacking Darrell's credibility, Wiggins's

counsel asked whether, during previous interviews, Darrell had mentioned to law enforcement anything about the prior auto thefts; Darrell stated he had not. Following cross-examination, Wiggins's counsel raised with the court the issue of the motion in limine, stating that the information that Darrell and Wiggins had stolen cars before "is not in the discovery anyplace," and had it been, he "would have [included] it in [his] motion in limine." Wiggins's counsel called the information a "[t]otal surprise to me" and "very prejudicial." The district court said that it understood Wiggins's counsel's position but that it didn't "want to come to a conclusion right now" because it wanted "to think about this overnight."

The next morning the court asked the prosecutor why she had asked Darrell about prior car thefts, and the prosecutor responded that it was "an inadvertent error," that she "did not have a reason under the rule" and "was not trying to show anything." The judge eventually concluded that—Wiggins's counsel having made no contemporaneous objection to the questions—"I have to . . . review under . . . plain error," and based on that standard, "I'm convinced there's no grounds for a mistrial." The judge also acknowledged that "the evidence was clearly prejudicial to Mr. Wiggins" but that "it had some probative value in terms of showing the knowledge of the witness Darrell and . . . his participation and a plan." The trial then continued.

At the conclusion of the government's evidence, Wiggins's counsel made an oral motion seeking judgment of acquittal under Federal Rule of Criminal Procedure 29. He argued both that "the evidence on the element of interstate manufacture of this particular vehicle is lacking" and that "there's no evidence at all with regard to identification of Mr. Wiggins." The trial court denied the motion, finding there was "prima facie evidence" as to both arguments sufficient to allow the jury to make the necessary factual findings. Wiggins then declined to put on any evidence in his defense.

The jury returned a verdict of guilty on Count I of the indictment, aiding and abetting carjacking, and not guilty on Count II, use of a firearm in relation to a crime of violence. Wiggins's counsel then filed a motion seeking judgment of acquittal or, in the alternative, a new trial. The district court denied the motion.

At the sentencing hearing the court noted Wiggins's sentencing memorandum and the request for a downward variance. The applicable guideline range was 168–210 months but was limited by the statutory maximum to 180 months. The district court sentenced Wiggins to 151 months' incarceration. This appeal followed.

## II.

### A.

We begin with Wiggins's argument that he is entitled to a mistrial because the substance of some of the prosecutor's questions of Darrell violated the order in limine as well as the Jencks Act. A mistrial is mandatory only "upon a showing of manifest necessity," a showing Wiggins has not made here; otherwise, it is discretionary. *Clemmons v. Sowders*, 34 F.3d 352, 354–55 (6th Cir. 1994) (quotation omitted). In determining whether a mistrial is warranted, the guiding principle is fairness to the defendant. *United States v. Atisha*, 804 F.2d 920, 926–27 (6th Cir. 1986). Where, as here, the defendant argues the district court should have granted a mistrial due to improper testimony, we ordinarily follow a two-step process. First, we "consider whether the challenged testimony was in fact improper." *United States v. Howard*, 621 F.3d 433, 458 (6th Cir. 2010). Second, "if we conclude that the testimony was improper, then we must determine whether the challenged testimony 'was so clearly improper and prejudicial to the defendants that the harm could not be erased by any instruction which the court might give.'" *Id.* at 459 (quoting *United States v. Smith*, 601 F.3d 530, 538 (6th Cir. 2010)).

Counsel for Wiggins did not immediately object to the prosecutor's questions about Darrell and Wiggins's prior car thefts, and the objection, when it was raised by motion for a mistrial, was not timely. For an objection to be timely under Federal Rule of Evidence 103, it "must be made as soon as the ground of it is known, or reasonably should have been known to the objector." *United States v. Meserve*, 271 F.3d 314, 324 (1st Cir. 2001) (quotation omitted).[1] We therefore review for plain error the district court's determination that the prosecutor's questions did not elicit testimony so prejudicial to Wiggins as to require a mistrial. "To establish plain error, a claimant must show: (1) error, (2) that is plain, (3) that affects the defendant's substantial rights, and (4) that 'seriously affect[s] the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Brown*, 332 F.3d 363, 370 (6th Cir. 2003) (quoting *United States v. Cotton*, 535 U.S. 625, 631 (2002)).

*The motion in limine.* The relevant portion of the order granting in part the motion in limine prohibited the introduction of evidence relating to Wiggins's criminal history. At oral argument, the government argued that the phrase "criminal history" includes only actions resulting in a conviction, and because the prosecutor did not ask Darrell about prior convictions, there was no violation of the court's order in limine. The government pointed to several places in the record where the district court indicated its agreement with this interpretation. *See* RE 77 at 1228 ("I don't think there should be a mistrial because [the prosecutor's questioning] is not—this was not the subject of a prior defense motion or a court ruling."); *id.* at 1231 ("[M]y overall sense is that there's not a mistrial, not a grounds for a mistrial based on the violation of [a] prior court order.").

---

[1] Other circuits have stated the rule even more narrowly. *See, e.g., United States v. Carson*, 52 F.3d 1173, 1187 (2d Cir. 1995) ("Rule 103 is designed to bring objections to the attention of the court and the opposing party at the earliest possible time so as to alert [the court] to the proper course of action and enable opposing counsel to take proper corrective measure.") (quotation omitted); *United States. v. Parodi*, 703 F.2d 768, 783 (4th Cir. 1983) ("Timeliness of objection under [Rule 103] requires that it be made at the time the evidence is offered.") (quotation omitted).

On appeal, Wiggins's attorney also acknowledged the difference between convictions and criminal activities where the defendant is never caught. Court Audio Recording at ~22:30. ("[T]he distinction [between having a criminal record and stealing cars without a conviction] is a valid one. . . . I do understand that distinction."). In response to a statement from the bench that, "[I]t's hard to say the motion in limine was violated," Wiggins's counsel responded, "Yes, your Honor." *Id.* at ~ 25:40.

We need not decide this issue here, however, because regardless of whether "criminal history" captures criminal conduct that does not lead to a conviction, the court did not plainly err in concluding that the prosecutor's questioning did not warrant a mistrial. Under the plain error standard, Wiggins must show that his substantial rights were affected by the alleged violation of the order in limine. The standard for determining whether a defendant's substantial rights have been affected is "whether the error affected the outcome of the district court proceedings." *United States v. Newsom*, 452 F.3d 593, 604 (6th Cir. 2006) (quotation omitted). We conclude that it did not. The stolen-car information was a minor part of Darrell's testimony and an even smaller part of the evidence against Wiggins that the government presented in its case in chief. Any unfair prejudice to Wiggins was minimized by Darrell's testimony that he and Wiggins had not carjacked or used firearms in their earlier car-theft activities. And Wiggins's counsel was able to attack Darrell's credibility by eliciting on cross-examination Darrell's admission that he had never disclosed these prior car thefts to law enforcement. The questions from the prosecutor and the responses they elicited did not affect Wiggins's substantial rights, nor do they meet *Howard*'s second step.

*Jencks Act violation*. During the trial the judge recognized that the prosecutor might have committed a Jencks Act violation by failing to disclose to Wiggins that Darrell had told the

government that he and Wiggins had committed prior car thefts. On appeal, Wiggins does not specifically argue the Jencks Act by name, although he does say that the government "knew about the evidence [of the prior thefts] yet did not disclose [the evidence] at the time the Motion in Limine was filed," and that the prosecutor "did not provide counsel for Appellant with the required pretrial disclosures containing the information as directed by the Court." Because he did not develop his Jencks Act claim, Wiggins forfeited it. *See United States v. Sandridge*, 385 F.3d 1032, 1035 (6th Cir. 2004) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). In any event, these cursory arguments are not sufficient to make out a Jencks Act violation. All that the Jencks Act requires is that Wiggins had the supposedly withheld information in time for cross-examination. In *United States v. Presser*, we stated:

> The clear and consistent rule of this circuit is that the intent of Congress expressed in the Act must be adhered to and, thus, the government may not be compelled to disclose Jencks Act material before trial. Accordingly . . . any "statement" in the government's possession related to the subject matter of a government witness's testimony shall not "be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a).

844 F.2d 1275, 1283 (6th Cir. 1988) (citations and footnote omitted). *See also United States v. Carter*, 621 F.2d 238, 240 (6th Cir. 1980) ("[T]he United States is generally under no duty to provide the statement of a government witness until that witness has testified on direct examination in the case."). The government complied with the *Presser* rule in this case because Wiggins's counsel had the information regarding the prior car thefts in time to use it on cross-examination. To the extent that Wiggins purports to appeal the denial of his motion for mistrial on grounds of a violation of the Jencks Act, he can satisfy neither of *Howard*'s two steps.

The district court neither abused its discretion nor committed plain error in denying the motion for mistrial.

**B.**

Wiggins next contends that the evidence was insufficient to support the verdict and argues that the district court improperly denied his motions based on Federal Rules of Criminal Procedure 29 and 33. First, he claims there was insufficient evidence to prove that he aided and abetted the carjacking. Second, he claims that the evidence was not sufficient to prove the interstate commerce element of the carjacking offense—namely, that Carr's vehicle had traveled in interstate commerce.

We review de novo the district court's decision to deny a Rule 29 motion for judgment of acquittal. *United States v. Gibson*, 896 F.2d 206, 209 (6th Cir. 1990). "The standard is whether the government . . . introduced evidence sufficient for any rational trier of fact to convict, viewing the evidence and all reasonable inferences in the light most favorable to the government." *Id.* We review for abuse of discretion the decision to deny a Rule 33 motion for a new trial. *United States v. Carson*, 560 F.3d 566, 585 (6th Cir. 2009). Wiggins's Rule 33 motion and supporting memorandum claimed, with virtually no developed argument, that the verdict was against the manifest weight of the evidence and that substantial legal error had occurred in the trial. We may grant a Rule 33 motion when the jury's verdict was against the manifest weight of the evidence or the interests of justice require it. *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010). And we have held that the "interests of justice" standard is met where substantial legal error has occurred in the course of the trial. *Id.*

*Aiding and abetting the carjacking*. To be guilty of the offense of carjacking, one must (1) "with the intent to cause death or serious bodily harm," (2) "take[] a motor vehicle that has

been transported, shipped, or received in interstate or foreign commerce from the person or presence of another," (3) "by force and violence or by intimidation." 18 U.S.C. § 2119. And one who aids and abets the offense is punishable as a principal. *See* 18 U.S.C. § 2(a). Wiggins cites a litany of reasons that the evidence was insufficient for the jury to link him to the carjacking: "[n]either the victim nor the witness were able to provide an in-court identification of Appellant"; "[t]he victim was unable to identify Appellant from a photo line-up"; and although Carr stated he was shot by the shorter of the two assailants, both Darrell and Wiggins are approximately the same height. But in fact, the government presented the testimony of Darrell, who testified to the specific details of the event, including Wiggins's carrying and use of the gun in the course of stealing the car. Wiggins complains that Darrell's testimony is not credible, but attacks on witness credibility are not sufficient to overturn a jury verdict. *See United States v. Adamo*, 742 F.2d 927, 934–35 (6th Cir. 1984). Evidence is only insufficient when "the government's case lacks evidence in support of one or more elements of the offense charged." *Id.* at 935. But Darrell's testimony provided evidence for each of the three elements of the carjacking offense under 18 U.S.C. § 2119, except for the connection of the car to interstate commerce.

*The vehicle's travel in interstate commerce.* The interstate commerce element was satisfied by the testimony of the GM employee that the car—a 2007 Chevy Trailblazer, which Wiggins carjacked in Michigan—had been manufactured in Ohio. The GM representative made this determination based on the vehicle identification number (VIN) provided to him. The FBI agent, in turn, testified that he determined the VIN of the carjacked vehicle through research based on Carr's personalized Michigan license plate. Wiggins argues that this testimony "does not constitute proof beyond a reasonable doubt of a nexus between the plate and the VIN sufficient to establish the interstate commerce element of the carjacking charge." This sufficiency of the

evidence claim fails for the reasons explained above. The government presented evidence on this issue and the jury chose to believe the government's witnesses. We will not substitute our judgment for that of the jury. Wiggins mentions as part of his sufficiency argument that the FBI agent's testimony was hearsay. But Wiggins wholly fails to develop this argument. "[A]n issue is deemed forfeited on appeal if it is merely mentioned and not developed." *Vance v. Wade*, 546 F.3d 774, 781 (6th Cir. 2008) (quotation omitted). Accordingly, we will not address it here.

We find no error in the denial of the Rule 29 and Rule 33 motions.

## C.

Wiggins conceded that his claim that he received ineffective assistance of counsel would not ordinarily be entertained on direct review but should be pursued through collateral review under 28 U.S.C. § 2255. Wiggins, however, argues that he qualifies for an exception "where trial counsel's ineffectiveness is so apparent from the record that additional fact-finding is unnecessary, or where there are obvious deficiencies in representation." The ineffectiveness he claims here is not so apparent. We therefore decline to review this claim, but note that Wiggins may raise it in a motion filed under 28 U.S.C. § 2255.

## D.

Finally, Wiggins claims that his sentence is procedurally and substantively unreasonable. We review both types of reasonableness "under the deferential abuse-of-discretion standard." *United States v. Lanning*, 633 F.3d 469, 473 (6th Cir. 2011).

*Procedural unreasonableness.* "Procedural reasonableness requires that a district court 'must properly calculate the guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors and adequately explain the chosen sentence—including an explanation for any variance from the guidelines range.'" *United States v. Presley*, 547 F.3d 625, 629 (6th Cir. 2008)

(quoting *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008)).  Wiggins's claim is that

he "filed a lengthy sentencing memorandum with the trial court in which he requested the court to

consider whether Appellant's race played a factor in the end result of his sentence being

disproportionately long to that of Caucasian men convicted of the same crime."  Because the

"district judge in the case did not make even a cursory mention of the Appellant's racial disparity

argument in sentencing Appellant to 151 months," Wiggins argues, his sentence is procedurally

unreasonable.  But Wiggins's "lengthy sentencing memorandum [filed] with the trial court,"

contains only this regarding racial disparity:

> This writer confesses to having no concrete idea of how the court should go about ensuring that Mr. Wiggins's sentence is devoid of the type of racial bias described in the monograph.[2]  To the extent that such bias occurs because courts are unaware of it, however, Mr. Wiggins wished to bring it to the court's attention for whatever value it may be.  Perhaps the probation department has information as to how, if at all, the statistic is being addressed by the courts. . . . For the reasons presented above, Mr. Wiggins submits that a sentence substantially below the guideline range determined by the probation department would address federal sentencing objectives.

Wiggins's submission of a "monograph" on racial disparity "for whatever value it may be" hardly

establishes grounds for a procedural-unreasonableness claim because the district court decided not

to mention it during sentencing.  All that *Presley* requires is that the district court properly calculate

the guidelines and adequately explain its decision.  547 F.3d at 629.  And the district court did that,

saying that it "received [Wiggins's counsel's] comprehensive sentence memo," and "did read [the]

brief," and that it was "happy to engage the issue of whether or not [Wiggins] should get a lower

sentence than 168 to 180 months [as suggested in the Presentence Investigation Report]."  This

indicates that the district court did not ignore Wiggins's submission and in fact was willing to

---

[2] This monograph was a product of the U. S. Sentencing Commission, entitled "Demographic Differences in Federal Sentencing Practices: An Update of the *Booker* *Report's* Multivariate Regression Analysis," and was appended to Wiggins's sentencing memorandum in the trial court.

consider his request for a lower sentence than recommended by the guidelines. The court discussed the § 3553(a) factors, including the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, and the need to adequately deter criminal conduct. The court's willingness to consider Wiggins's request and its careful consideration of the § 3553(a) factors meet *Presley*'s procedural reasonableness requirements.

*Substantive unreasonableness.* Substantive reasonableness requires that a district court refrain from choosing a sentence arbitrarily, grounding the sentence on impermissible factors or unreasonably weighing a pertinent factor. *Lanning*, 633 F.3d at 474. Wiggins's primary argument is that the sentence he received and the sentence his co-defendant Darrell received are disproportionately different. Wiggins states that "[a]chieving proportionality in the sentences of both defendants in a case, even accounting for criminal history and other differences, is a goal of sentencing," as recognized in § 3553(a)(6). But Wiggins misstates the law. Section 3553(a)(6) "concerns national disparities within a class of similar defendants, not disparities between one defendant and another." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). Furthermore, the district court showed no arbitrariness in its sentencing that would suggest substantive unreasonableness. It considered but rejected the argument of proportionality between Wiggins and Darrell, noting that, unlike Darrell, "Mr. Wiggins has not exhibited remorse. Mr. Wiggins has not accepted responsibility." Furthermore, as described above, it carefully walked through the § 3553(a) factors. Wiggins provides no support for his claim of substantive unreasonableness.

## III.

For the foregoing reasons, we decline to entertain the claim of ineffective assistance of trial counsel, and we **AFFIRM** the judgment of the district court.